COCA–COLA CO. v. BRANHAM et al.

(District Court, E. D. Oklahoma. July 15, 1914.)

1. TRADE-MARKS AND TRADE-NAMES (§ 70*) — UNFAIR COMPETITION — ACTS CONSTITUTING.

Plaintiff prepared and sold a beverage called "Coca-Cola," and defendants one called "Koke," both of which were made from syrups mixed with carbonated water, put up in bottles, and also served by the glass. Defendants' bottles were slightly taller than plaintiff's. The bottles of each party had a tin cap over the stopper, with the name of the beverage in script thereon, but it was the custom of dealers in serving the two beverages to remove the tin caps so that the purchaser did not see the name. Defendants sold exclusively to dealers. The color of the two beverages was similar, but it appeared that there were 181 beverages having practically the same color as Coca-Cola. Defendants neither sold Koke for Coca-Cola nor advised their customers to do so. *Held,* that defendants were guilty of no unfair competition.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. § 70.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 73*)—ORIGIN OR ADOPTION OF MARK OR NAME.

That certain purchasers of "Coca-Cola," prepared and sold by plaintiff, referred to it as "Koke" did not entitle plaintiff to enjoin defendants from selling a somewhat similar beverage under the name "Koke," on the theory that by adoption or user the name "Koke" had become a secondary trade-name of plaintiff's product, where plaintiff had neither adopted nor used such name in connection with its beverage.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. § 73.*]

In Equity. Suit by the Coca-Cola Company against Joseph D. Branham and another, partners doing business as the Sand Springs Bottling Works. Temporary restraining order dissolved, and bill dismissed.

Dillard & Blake, of Tulsa, Okl., for plaintiff.

Randolph, Haver & Shirk, of Tulsa, Okl., for defendants.

YOUMANS, District Judge. [1] This is a suit in equity to enjoin the defendants from an infringement of the trade-name of plaintiff, and to prevent unfair competition. There is no evidence tending to show that defendants have been guilty of infringement of plaintiff's trade-name. The facts with regard to the allegation of unfair competition are as follows: The trade-name of plaintiff's product is "Coca-Cola." The defendants prepared and sold a beverage which is called "Koke." Both beverages are made from syrups mixed with carbonated water. Both are put up in bottles, and are also served by the glass at cold drink stands. The bottles containing Koke are a little taller than those containing Coca-Cola. The bottles containing each beverage have a tin cap over the stoppers. The words "Coca-Cola" and "Koke" appear in script on these tin caps. Coca-Cola and Koke are similar in color. Defendants sold to dealers exclusively. It appears in testimony that in some instances persons wanting Coca-Cola would say, "Give me a dope," or "Give me a Koke." There is also proof to the effect that two or three dealers in Tulsa gave Koke to their customers when they

had called for Coca-Cola. There is no proof that the defendants sold Koke for Cola-Cola, or advised their customers to do so. In that respect this case differs from the case of Coca-Cola Co. v. Gay-Ola Co., 200 Fed. 720, 119 C. C. A. 164. In that case the facts are set out as follows:

"Defendant claimed to have discovered complainant's formula, and to be in fact making the same thing. It adopted for its product * * * the word 'Gay-Ola.' It proceeded to bring this product into public notice by some advertising under its own name and by some other methods not criticized by complainant, all to an extent not distinctly shown by this record. It also wrote a series of letters to bottling companies which were engaged in bottling Coca-Cola, which letters were to the effect that it would sell the bottler Gay-Ola for a less price than he was paying for Coca-Cola; that the two articles were just alike, and no one could tell the difference; that the bottler could, if he wished, substitute Gay-Ola for Coca-Cola and his patrons would never know it; that several bottlers, who had been handling Coca-Cola, were doing this successfully and without discovery; and that, if the bottler desired, defendant would ship him Gay-Ola in plain, unmarked packages, so that his dealings with defendant would not be observed. Several of the letters in the record are of this substantial effect, though they use different forms of expression, and some only by hint and innuendo convey the invitation to substitute and so to deceive the final purchasers. Defendant also sent letters to soda fountain proprietors, setting out the cheap price and the merits of Gay-Ola and its identity with Coca-Cola, and quoting from a testimonial of a soda fountain proprietor: 'No one can tell it from Coca-Cola, and I sell it for Coca-Cola, and every one says I have the best Coca-Cola in the city.' On these letters, the defendant added the postscript: 'For your information, beg to state that we are shipping twenty-one Coca-Cola bottlers. "Nuff said." ' "

Upon those facts it was held by the Court of Appeals for the Sixth Circuit that a case of unfair competition had been made out in that defendant sold its product "as and for Coca-Cola." Nothing appears in the testimony in this case connecting defendants with any effort to sell their product for Coca-Cola. There is nothing to show that they had such intention.

In the case of Coats v. Merrick Thread Co., 149 U. S. 562, 13 Sup. Ct. 966, 37 L. Ed. 847, the court said:

"Rival manufacturers may lawfully compete for the patronage of the public in the quality and price of their goods, in the beauty and tastefulness of their inclosing packages, in the extent of their advertising, and in the employment of agents, but they have no right, by imitative devices, to beguile the public into buying their wares under the impression they are buying those of their rivals."

That was a suit charging unfair competition in the manufacture and sale of thread. It appeared in evidence that dealers had delivered to purchasers the thread of the defendants when they had been asked for that of plaintiff. On that point the court said:

"We think the defendants have clearly disproved any intention on their part to mislead the dealers who purchase of them. Indeed, such dealers could not possibly fail to know what they were buying, and the fraud, if any, was practiced on the buyer of a single or a small number of spools, who might be induced to purchase the thread of the defendants for that of the plaintiffs."

Further in the opinion the court said:

"If the purchaser of such thread desires a particular make, he should either call for such, in which case the dealer, if he put off on him a different

make, would be guilty of fraud, for which the defendants would not be responsible, or should examine himself the lettering upon the spools."

It is true that it appears in testimony that it is the custom of dealers, in serving the two beverages, to remove the tin caps from the bottles, so that the purchaser does not see the name thereon, but that would be true as to any beverage of like or similar color to Coca-Cola. According to the testimony of plaintiff's agent, there are 181 beverages having practically the same color as Coca-Cola. Defendants cannot be held responsible for what their customers did without aid, suggestion, or inducement from them.

[2] Plaintiff also argues that "Koke" has become the "secondary name" of its product, because it appears from the proof that some persons desiring that product say to the dealer, "Give me a Koke." A trade-name may be acquired by adoption or user. In their brief, counsel for plaintiff quote the following from 38 Cyc. 765:

"Trade-names are acquired by adoption and user and belong to the one who first used them and gave them a value."

But plaintiff has never used the word "Koke" in connection with its product. It has taken and used the name Coca-Cola. The use of the word "Koke," as applied to the product of plaintiff, has been, so far as the testimony shows, by persons upon their volition without being moved thereto by defendants. If the use of the name had been observed by defendants, and it was afterwards adopted by them with the purpose and intention of taking advantage of that fact and to engage in the manufacture·and sale of a beverage and call it "Koke," and sell it "as and for Coca-Cola," then a case of unfair competition would undoubtedly be made out.

Assuming that there is such a thing as a secondary trade-name, the right to its exclusive use must depend upon adoption and use, just as in the case of a primary name. There is such a thing as a name having acquired a secondary meaning. Elgin National Watch Co. v. Illinois Watch Case Co., 179 U. S. 665, 21 Sup. Ct. 270, 45 L. Ed. 365; Bates Mfg. Co. v. Bates Numbering Machine Co. (C. C.) 172 Fed. 892. But the facts in this case do not call for an application of that rule. The relief sought here is the prohibition of the use of a name that the defendants have neither adopted nor used. There is nothing to show that the defendants were using the name for the purpose of selling the beverage manufactured by them for Coca-Cola.

The temporary restraining order will be dissolved, and the plaintiff's bill dismissed.