DENVER CHEMICAL MFG. CO. v. LILLEY et al.

(Circuit Court of Appeals, Eighth Circuit. July 29, 1914. Rehearing Denied November 2, 1914.)

No. 4140.

TRADE-MARKS AND TRADE-NAMES (§ 93*)—SUIT FOR UNFAIR COMPETITION—SUFFICIENCY OF EVIDENCE.

Findings of fact by a special master, concurred in by the trial court, that a trade-name, adopted by defendant for its product and used on its containers, was not one originally given by the general public to complainant's product, but was so applied generally to all similar products, *held* sustained by the evidence, and to warrant a decree dismissing complainant's bill for unfair competition by reason of its use by defendant.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 104–106; Dec. Dig. § 93.*

Unfair competition in use of trade-mark or trade-name, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Suit in equity by the Denver Chemical Manufacturing Company against Thomas Lilley and the Germicide Company. Decree for defendants, and complainant appeals. Affirmed.

Henry D. Estabrook, of New York City (Edmund Wetmore and William A. Jenner, both of New York City, and S. W. Sawyer and Lathrop, Morrow, Fox & Moore, all of Kansas City, Mo., on the brief), for appellant.

Eugene S. Quinton, of Topeka, Kan. (Cranston, Pitkin & Moore, of Denver, Colo., on the brief), for appellees.

Before HOOK and CARLAND, Circuit Judges, and REED, District Judge.

CARLAND, Circuit Judge. This action was originally instituted by appellant against appellee Thomas Lilley, for the purpose of restraining him from unfair business competition. On application the Germicide Company, which manufactures the product alleged to have been sold by Lilley, was allowed to intervene. Issues having been joined and proofs taken, the case came on for hearing on pleadings, proofs, and master's report. As a result of the hearing the action was dismissed for want of equity.

The appellant manufactures a plastic compound called "Antiphlogistine." It began the manufacture of this medicament in Denver, Colo., in 1893. Its business grew very rapidly, until in 1900 the company for business reasons removed its plant from Denver, Colo., to the city of New York. Its sales at the time of the commencement of this action were upward of 2,000,000 pounds yearly, and its expenditures for advertising $100,000 yearly. Shortly after its product was first placed on the market, the general public gave to "Antiphlogistine" the

---

nickname "Denver Mud." Appellant itself has never adopted the name "Denver Mud" as a label, or registered, advertised, or encouraged its use by the public or the trade. It is claimed, however, by appellant, that a customer may go into almost any drug store in almost any part of the globe—New York, London, Berlin, Paris, Omaha, Kansas City, Peoria, Pleasantville, Peaceful Valley, Bird Center—and ask for "Denver Mud," and he will be handed a can of "Antiphlogistine." This medicament is sold by appellant in tin containers bearing the following label:

The Germicide Company, which has become the principal defendant, manufactures at Denver, Colo., a plastic compound called "Denver Mud." It is sold in tin containers and bears the following label:

There are no disputed questions of law. It being conceded, as it must be, that while appellant adopted the name "Antiphlogistine" for its product, still if for some reason the general public has given to the product another and different name, by which it alone is known

to the trade, the appellant becomes entitled to protection by injunction against one who thereafter endeavors through the adoption of such term as the public employs as synonymous for or as a secondary designation of such product, for in so doing the purchasing public may be deceived as to the article purchased, and the appellant is deprived of that trade which its industry and money have built up. The question to be decided is entirely one of fact. The questions of fact are: Had the name "Denver Mud," prior to the use thereof by the Germicide Company, come to indicate and designate in the public mind the appellant's medicament alone? Is the Germicide Company, by the use of the label above described, endeavoring to pass off to the public its plastic compound as that of the appellant?

The intention of the Germicide Company must be found from what it does. It may be said that the labels above described are both printed upon yellow brown paper. They have been compared by this court from original exhibits, and outside of the words "Denver Mud" there can be found no intention to deceive from the labels themselves. So the question is narrowed to the use of the words "Denver Mud" upon the label of the Germicide Company. The Germicide Company claims that the term "Denver Mud" is a popular name for all preparations similar to those of appellant and appellees; that it was the proprietor's name for none, prior to the adoption thereof by the Germicide Company; that no product was labeled "Denver Mud," or advertised as "Denver Mud," by any owner, manufacturer, or dealer prior to the adoption thereof by the Germicide Company—"Denver Mud" simply being a popular term for the genus, plastic dressing; that, such being the case, the popular generic term was open for adoption as a specific and distinctive trade-name by any one.

After the evidence was taken, the case was referred by consent of parties to a special master to examine and consider the proofs and return answers to the following questions of fact:

"(1) At or about what date was the term 'Denver Mud' first commonly applied by the public to a plastic dressing or plastic dressings?

"(2) Out of what fact or circumstances did the name 'Denver Mud' arise? Was it from the fact that complainant commenced the manufacture and sale of its preparation, Antiphlogistine, and was the term 'Denver Mud' first commonly applied to such plastic dressing, or was its origin due to some other cause? If so, what?

"(3) Was the term 'Denver Mud' first commonly applied to Antiphlogistine, or was that name, when first coined and commonly applied to plastic dressing, employed by the public to designate other plastic dressings as well as Antiphlogistine? If so, what other dressing?"

To which the master returned answers from the proofs as follows:

"(1) The term 'Denver Mud' was first commonly applied by the public to plastic dressings about 1891."

"(2) The earlier products in plastic dressings were manufactured at Denver, Colo., from clay found in that vicinity forming their base; and from that fact or circumstance the name 'Denver Mud' arose and was applied to such dressings."

"(3) The name 'Denver Mud,' as applied to plastic dressings, did not arise from the fact that complainant commenced the manufacture and sale of its preparation, Antiphlogistine, and such term was not first commonly applied

to such plastic dressing, but its origin was due to the cause stated in finding No. 2."

"(4). The term 'Denver Mud' was not first commonly applied to Antiphlogistine, but that name, when first coined and commonly applied to plastic dressings, was employed by the public to designate other plastic dressings as well as Antiphlogistine, to wit, Althio, Glycol, Marach, and Anhydrocine, and afterwards was applied to all plastic dressings as they were produced and placed upon the market."

Exceptions were taken to this report of the special master, which upon a full consideration by the District Court were overruled, and the master's report confirmed. It is claimed by appellant that the questions submitted to the special master restricted the case to a too narrow compass; that there were other facts shown by an examination of all the testimony, which had an important bearing upon the general question of whether there was on the part of the Germicide Company unfair business competition as known to the law. But we think, after a careful examination of all the evidence, that there is no case whatever presented on the part of the appellant, when the words "Denver Mud" are eliminated from the label of the Germicide Company, and that the case must turn wholly upon the use of those words. The evidence has been examined by the special master and by the trial judge. They unite in answering certain questions from the evidence as detailed in the record. While we would not disturb the finding of fact, when concurred in by the master and the trial judge, unless there was a serious mistake, we do not in this case desire to place our judgment entirely upon that ground. An examination of the evidence has convinced us that the conclusions arrived at by the master and the judge are reasonable and sustained by the evidence.

It results that the decree appealed from must be affirmed; and it is so ordered.