## CARTHAGE TOBACCO WORKS v. BARLOW–MOORE TOBACCO CO.

(District Court, W. D. Kentucky, at Bowling Green.  February 7, 1924.)

1. **Trade-marks and trade-names and unfair competition &⟶60—Similarity of labels held insufficient to constitute infringement of trade-mark.**

    Where labels on plaintiff's and defendant's tobacco were slightly similar in color of background and in the use of the words "Red Leaf," but plaintiff's label bore the impress of its registered trade-mark and had a large square of double red lines, in which was a brown emblem of a leaf crossed by a twist of tobacco, while defendant's contained a square of single black lines with a picture of one of its officials, *held*, that there was not sufficient similarity to constitute infringement of plaintiff's trade-mark.

2. **Trade-marks and trade-names and unfair competition &⟶1—How exclusive use of symbol of trade-mark acquired.**

    To acquire the right to the exclusive use of a name, device, or symbol as a trade-mark, it must have been primarily adopted for the purpose of identifying the origin or ownership of the article to which it is attached, or point distinctively, either by itself or by association, to the origin, manufacture, or ownership, of the article on which it is stamped.

3. **Trade-marks and trade-names and unfair competition &⟶3(1), 9—Words may by use acquire secondary meaning, and become entitled to protection as trade-mark.**

    The name of a locality, a generic name, or a name merely descriptive of an article of trade, its qualities, ingredients, or characteristics, cannot be protected as a legal trade-mark; but words which are not in themselves a valid trade-mark may, by association with goods of a particular manufacturer, acquire a secondary significance, denoting a product of the manufacturer, and thus be employed as a trade-mark, and as such be entitled to protection.

4. **Trade-marks and trade-names and unfair competition &⟶3(5)—Name "Red Leaf," applied to tobacco, held not entitled to protection as trade-mark.**

    The words "Red Leaf," though not the name of a species of tobacco, represent a grade or quality especially desirable for smoking and chewing purposes, and do not, by themselves or by association with the rest of the trade-mark, point distinctively to the origin or ownership of a brand of tobacco, and cannot be protected as a trade-mark.

5. **Trade-marks and trade-names and unfair competition &⟶93(3)—Evidence held insufficient to sustain charge of unfair competition.**

    In a suit to restrain imitation of labels and wrappers on tobacco, evidence *held* insufficient to sustain the charge of unfair competition.

In Equity.  Suit by the Carthage Tobacco Works against the Barlow-Moore Tobacco Company.  Injunction denied, and bill dismissed.

Edwin C. Henning, of Evansville, Ind., and H. B. McGinness, of Carthage, Tenn., for plaintiff.

N. P. Sims and John B. Rodes, both of Bowling Green, Ky., for defendant.

MOORMAN, District Judge.  This suit was brought by the Carthage Tobacco Works, a Tennessee corporation, against the Barlow-Moore Tobacco Company, a Kentucky corporation, to restrain defendant from using, and for damages for an infringement of, plaintiff's trade-mark, and for similar relief against unfair competition resulting, as alleged, from defendant's imitating certain labels and wrappings

&⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

used by plaintiff in selling the tobaccos that it manufactures. On this final hearing it is necessary to consider but two questions: First, whether the words, marks, or devices used by defendant on its manufactured product are calculated to deceive the public and enable defendant to sell its product as that of plaintiff, thus constituting an infringement of the latter's trade-mark; and, second, has defendant, either in its manner of soliciting business or marketing its goods, been guilty of unfair competition?

[1] One phase of the question of infringement can be somewhat simplified by an examination and comparison of the trade labels used by the parties. Plaintiff's label bears the impress of its trade-mark, which was registered in the United States Patent Office in 1901. The label has a bright yellow background, on which there is a large square, formed by double lines in red, in the center of which is the emblem of a leaf crossed by a twist of tobacco, both brown in color. Above the emblem are the words "Carthage Tobacco Works," beneath which and partially on the brown background are "Red Leaf," beneath which is "Smoking" and, under that, "Tobacco," all in large red type, and the latter two on the brown background. Beneath the leaf, in small red letters, are the words "Trade-Mark," and at the bottom of the label, within the square, in large red letters, are "Carthage, Tenn.," under which, in similar, but smaller, type, are the words "Factory No. 119." The label used by defendant was adopted in 1916, but the marks and words thereon have never been registered. It is about the same size as the label used by plaintiff, but the background is of dull yellow. A square of single black lines is printed on the label, and within and near the top of the square, in heavy black type, are the words "Moore's Red Leaf," beneath which is a small picture of Moore, one of the officials of defendant. Under the picture are printed, in large black letters, "Smoking Tobacco." The labels attached to the twisted tobaccos sold by the parties are of metal and smaller than the paper labels, but in lettering, arrangement, and devices are identical with the corresponding paper labels.

It is insisted by plaintiff that the general effect and appearance of defendant's label tends to induce the belief that the goods to which it is attached are those manufactured by plaintiff under its established trade-mark. In this contention the court is unable to concur, for, although there is a slight similarity between the labels in background and in the use of the words "Red Leaf," there is, as will be seen from the preceding descriptions, such a marked difference in the main features of the two that even the most cursory examination would reveal no similarity in general appearance. Hence there can be no mistaking of the one for the other, and necessarily, therefore, no infringement of plaintiff's trade-mark, unless the words "Red Leaf," by long association with plaintiff's brand, have come to be understood as exclusively indicating that product. This necessitates a consideration of the effect and purpose of the use of those words by defendant.

[2] The general rule as to the use of a name or device as a trade-mark, as laid down in Columbia Mill Co. v. Alcorn, 150 U. S. 460, 14 Sup. Ct. 151, 37 L. Ed. 1144, is:

· "That to acquire the right to the exclusive use of a name, device, or symbol, as a trade-mark, it must appear that it was adopted for the purpose of identifying the origin or ownership of the article to which it is attached, or that such trade-mark must point distinctively, either by itself or by association, to the origin, manufacture, or ownership of the article on which it is stamped. It must be designed, as its primary object and purpose, to indicate the owner or producer of the commodity, and to distinguish it from like articles manufactured by others."

[3] It was also said in that opinion that a trade-mark "cannot consist of words in common use as designating locality, section, or region of country"; and a similar ruling is that "a generic name, or a name merely descriptive of an article of trade, of its qualities, ingredients, or characteristics," is not subject to protection as a legal trade-mark. Goodyear Co. v. Goodyear Rubber Co., 128 U. S. 598, 9 Sup. Ct. 166, 32 L. Ed. 535. But it also is well settled that words which are not in themselves a valid trade-mark may, by association with the goods of a particular manufacturer, acquire a secondary significance denoting a product of the manufacturer, and thus be employed as a trade-mark, and as such be entitled to protection. Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537, 11 Sup. Ct. 396, 34 L. Ed. 997; Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118; French Republic v. Saratoga Vichy Co., 191 U. S. 427, 24 Sup. Ct. 145, 48 L. Ed. 247; Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., 208 U. S. 554, 28 Sup. Ct. 350, 52 L. Ed. 616.

[4] These rules do not seem difficult of application to the facts in this case. The evidence shows that there is not a species of tobacco known as "Red Leaf," but the different kinds, such as "Burley," "One Sucker," and "Green River," are graded according to color, which with other qualities determines the value and market price, and that among the grades in colors are red, dark red, bright red, and colory. It further shows that the designation "red," as applied to tobacco, is derived from a tint of that color in the product, although the product itself may not reflect that cardinal color or any of the familiar shades of it. It also appears that the color red indicates that the tobacco has ripened well and is air cured, both of which enhance its usefulness for smoking and chewing purposes. While "Red Leaf" may not, therefore, be regarded as a generic term, or as representing a particular kind of tobacco, it does represent a grade of or quality in the tobaccos used by complainant and defendant which signifies fitness for the uses for which their products are made. In these circumstances, it must be held that the words, either by themselves or by association with the rest of the trade-mark of plaintiff, do not point distinctly to the origin or ownership of the brand of tobacco manufactured by plaintiff, but that they indicate a quality found in certain tobaccos that is especially desirable for smoking and chewing purposes.

In view of the conclusion just stated, it is unnecessary to discuss the numerous cases cited by plaintiff in support of its contention on this point, because they, as will be seen on examination, are based on an application of general principles to particular states of fact. It may be said, however, that Helmet Co. v. Wm. Wrigley, Jr., Co., 245 Fed. 824, 159 C. C. A. 164, is not in point, for there it was held that the similarity in the labels was so marked that the "average user desiring

the product of either producer would in all likelihood be misled into buying the product of the other," and also that the degree of resemblance could receive but one interpretation; i. e., that the appellant's label was an ingenious device, calculated to confuse and deceive. The facts in this case more nearly accord with those in Joseph Schlitz Brewing Co. v. Houston Ice & Brewing Co., 241 Fed. 817, 154 C. C. A. 519; Id., 250 U. S. 28, 39 Sup. Ct. 401, 63 L. Ed. 822, than with any other case cited. In that case the claims of infringement and unfair competition were denied.

[5] In respect to the contention that defendant's label was adopted and has been used with the design of confusing its goods with those manufactured by plaintiff, it is sufficient to say that the dissimilarity between the two labels is too striking to effectuate any such purpose, and, further, the record discloses no evidence warranting that view. The growth of defendant's business after the adoption of the label that it now uses does not permit of the inference of fraud or deception imposed on plaintiff or the public, for defendant's prosperity has not been so extraordinary that it may not be fairly attributed to a normal growth of the business from its inception.

Nor can the claim of unfair competition be sustained, since it does not appear that defendant has deceived or attempted to deceive any of the purchasers of tobacco in the territory where the products of both parties are sold. It is true that it markets its smoking tobacco in cloth bags of the same shape, size, and appearance as those used by plaintiff, but the record contains the following stipulation:

"The fact that defendant markets its granulated smoking tobacco in red cloth bags, round in shape and of a similar size and appearance as plaintiff's product, and encircled with a yellow band, as is plaintiff's product, is not considered by the complainant as any circumstance of infringement; nor is the fact that defendant's twist tobacco is similar in size and shape as that of complainant's, and that a yellow tin tag is placed in a similar position on defendant's twist as is placed on complainant's twist, any circumstance of infringement, as all twists and granulated tobaccos are dressed and marketed for the public in practically the same form, color, and shape of packages as complainant and defendant are using—the sole and only issue arising on the question of infringement between the complainant and defendant being the use by defendant of the words 'Red Leaf.'"

According to this stipulation, many tobacco manufacturers use red cloth bags of similar size and appearance to those used by plaintiff. In this particular defendant has not transcended any legitimate custom. Neither has it represented the goods manufactured and sold by it as those manufactured and sold by plaintiff, but, on the contrary, has made persistent effort to call the attention of the public to its own manufactured articles. In view of these facts, plaintiff's action cannot be sustained on the ground of unfair competition.

For the reasons stated, the injunction is denied, and the bill is dismissed, at plaintiff's cost.