**COCA–COLA CO. v. BUSCH et al.**
Civil Action No. 1113.

District Court, E. D. Pennsylvania.
Jan. 12, 1942.

406

Brown & Williams, by Joseph D. Morelli, and Ira Jewell Williams, all of Philadelphia, Pa., Spalding, Sibley, Troutman & Brock and by Frank Troutman, all of Atlanta, Ga., and Rogers, Woodson & Rogers, by James H. Rogers, all of Chicago, Ill., for plaintiff.

Samuel Liever, of Reading, Pa., and H. P. Abramson, of Philadelphia, Pa., for defendants.

GANEY, District Judge.

The bill in this case seeks relief by injunction, both preliminary and perpetual, against the defendants, their attorneys, employees, servants, representatives and assigns, from (a) using upon or in connection with the manufacture, advertising, offering for sale or sale of any beverage syrup or beverage made therefrom, the work "koke" whether in association with the word "up" or any other word or words, and whether spelled "koke" or otherwise; (b) infringing plaintiff's trademark "Coca-Cola" in any other manner or form whatsoever, and from competing unfairly with the plaintiff in any other manner or form whatsoever, etc.

After alleging the required jurisdictional qualifications, the plaintiff's bill avers that it is engaged and has been for many years in the manufacture of a soft drink syrup under the trademark "Coca-Cola"; that a considerable portion of the public abbreviate the trademark to "koke (coke)," and call for it as "koke (coke)"; that when offered as a soft drink "Koke (coke)" means "Coca-Cola"; that the defendants have adopted a name to be used on a soft drink the words "Koke-Up" and have caused the same to be copyrighted in the United States Patent Office; that the defendants threaten to manufacture, advertise, offer for sale and sell a soft drink, using the name "Koke-Up"; that unless enjoined by the court the defendants will carry out their threat and put on the market a soft drink named "Koke-Up"; that these threatened acts will constitute unfair competition; that the application of the word "koke" to a soft drink is a representation that it is "Coca-Cola". The answer inter alia denies that a considerable number of the public abbreviate the trademark "Coca-Cola" to "koke (coke)", or call for "Coca-Cola" as "koke (coke)", but that the public refers to and calls the plaintiff's product "Coca-Cola"; it is admitted that the defendants intend to manufacture, offer for sale and sell soft drinks and use thereon the name "Koke-Up"; it is further denied that the acts averred in the complaint constitute unfair competition in the use of the name "Koke-Up" as a soft drink, and that in no wise is it a representation that it is "Coca-Cola".

It can be seen that this bill is to prevent threatened injury to the plaintiff, as the defendants' product, "Koke-Up," is not presently made or manufactured. During the taking of testimony on the application for the preliminary injunction, it was agreed by both sides that the matter should be disposed of as of final hearing. It was further shown at the hearing that the other defendant, Curtis A. Davies, had withdrawn from the enterprise and all rights to the enterprise were owned by the defendant Busch alone.

 It is contended by the defendant that the action here brought is premature and that the equitable powers of the court should not be used by way of injunction. However, this contention is rejected since one of the vital principles of equity is that it will aid the vigilant, and accordingly it is not necessary when, as here, the only acts left to be performed are the manufacture and sale of the product itself, to hold that the plaintiff must sit idly by, and await until the product is manufactured, and put on the market, to have resort to the courts for redress. Standard Oil Company of New York v. Standard Oil Company of Maine, D.C., 38 F.2d 677; Pennsylvania v. West Virginia, 262 U.S. 553, 593, 43 S.Ct. 658, 67 L. Ed. 1117, 32 A.L.R. 300; Reeser Milk Co. v. Pates et al., 320 Pa. 11, 181 A. 211; Pottsville Union Transit Co. v. St. Clair Borough, 261 Pa. 293, 104 A. 602.

 Another contention urged upon the court by the defendant is that since there was no proof of any interstate traffic of the product, the court had no jurisdiction to entertain the bill and urged the case of Horlick's Malted Milk Corp. v. Horluck's, Inc., 9 Cir., 59 F.2d 13, as authority for his contention. However, this case was a statutory trademark infringement and the instant case is one at common law, and as was point-

ed out in Great Atlantic & Pacific Tea Co. v. A & P Radio Stores, D.C., 20 F.Supp. 703, 706, since this court has jurisdiction because of the diversity of citizenship, it is immaterial whether there is interstate commerce involved.

Since jurisdiction here rests upon diversity of citizenship, and the issues involve questions of common law, the matter is within the scope of Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. This, however, is not of particular importance since the law as announced in the state courts is in no wise different from that laid down by the federal courts. The leading Pennsylvania authority, B. V. D. Co. v. Kaufmann & Baer Co., 272 Pa. 240, 116 A. 508, 509, says: "The gist of the offense seems to be whether the act done tends to pass off the goods of one for those of another, * * * and the basis of the action is fraud or deceit, misleading the public in the purchase of goods". See also American Clay Mfg. Co. v. Ameriman Clay Mfg., 198 Pa. 189, 47 A. 936. Hence in both the federal and state courts, in any trademark infringement and unfair competition case, a likelihood that the public will be confused into believing that a competitive product is in fact that of the plaintiff, must be demonstrated. Stroehmann Bros. v. Manbeck Baking Co., 331 Pa. 96, 200 A. 97; B. V. D. Co. v. Kaufmann & Baer Co., supra; Maytag Co. v. Meadows Mfg. Co., 7 Cir., 35 F.2d 403; Hiram Walker & Sons v. Penn-Maryland Corp., 2 Cir., 79 F.2d 836.

The defendant proposes to manufacture and sell as a bottled product a soft drink which he has designated as "Koke-Up" for which a copyright has been applied for. The product has yet not been manufactured nor sold, and it is only the threatened injury to the plaintiff's product as has been indicated that relief is here asked for. The complainant alleges both trademark infringement and unfair competition in its bill, and accordingly it seems to me that the real question presented is whether or not the name adopted by the defendant, "Koke-Up", so nearly resembles the word "koke (coke)," an abbreviation or nickname for "Coca-cola" by which the buying public has come to orally designate the plaintiff's product, so as to be likely to deceive.

It is generally recognized today that the emphasis on cases concerning trademarks, tradenames and unfair competition is not only the injury occasioned to the innocent parties but equally as much on the injury suffered by the public and it is accordingly becoming increasingly more evident that if defendant's acts result in the confusion and deceit of the public primarily relief will be granted. In other words it seems to me that in the progress of the law of trademark infringement and unfair competition as well, the likelihood of injury to the public which may result from the use of the defendant's product is one of the essentials which the courts consider in granting equitable relief. Nims on Unfair Competition and Trademarks, Third Edition, 1929, Sec. 380, page 967; Great Atlantic & Pacific Tea Co. v. A & P Radio Stores, supra; California Fruit Growers Exchange et al. v. Windsor Beverages, Limited, et al., 7 Cir., 118 F.2d 149 at page 152.

The purpose of a trademark is to identify the business in connection with which it is used and accordingly it will be protected only when used in connection with a business, for trademarks and the right to their exclusive use are property rights, in the sense that the right to one's trade, and the good will that follows from it, free from unwarranted interference from others is a property right. The trademark is the instrumentality by which this property right is protected and the right grows out of its use in trade not merely out of its adoption. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713; United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141; Carthage Tobacco Works v. Barlow-Moore Tobacco Company, D.C., 296 F. 142; Amoskeag Mfg. Co. v. D. Trainer & Sons, 101 U.S. 51, 25 L.Ed. 993; Consumers Co. v. Hydrox Chemical Co., 40 App.D.C. 284. Accordingly, here the plaintiff company did not use the word "koke (coke)" or identify its product with the word by sale, advertisement or otherwise and so a strict construction of the authorities on common law trade infringement would seem to hold that there could be no infringement, and accordingly it is to the broader field of unfair competition that we must look to for redress, if any. In consideration thereof the following Findings of Fact are arrived at: (1) The complainant, the Coca-Cola Company, is a Delaware corporation and the defendant is a citizen and resident of the State of Pennsylvania; (2) the complainant, the Coca-Cola Company, is engaged in the manufacture and sale of a soft drink under the trademark "Coca-Cola"; (3) the complainant's product, "Coca-Cola," is widely advertised and well known

to the trade and public alike; (4) that the word "koke (coke)" when used by the purchasing public is in designation of the soft drink "Coca-Cola"; (5) that the word "koke (coke)" is used as an abbreviation by the purchasing public for the trademark "Coca-Cola"; (6) that the word "koke" is pronounced exactly like the first syllable in the word "Coca-Cola"; (7) that the word "koke (coke)" was given to the product "Coca-Cola" solely by the purchasing public; (8) that the defendant, John W. Busch, was about to manufacture a bottled product known as "Koke-Up" at the commencement of these proceedings; (9) that the defendant's product, "Koke-Up", was to be marketed as a bottled product, containing twelve ounces, light green in color, with a label pasted thereon, at the head of which are the words, "Its time for Koke-Up", with a picture of a clock in the center of the label, and at the bottom thereof the words "Up-Koke-Up", and on the cap of the bottle the words, "Koke-Up"; that the dominating word on the label of the product "Koke-Up" is the word "Koke," it being in the center portion of the label and much larger than the words "Up" to the lower left and right of it; (10) that "Koke-Up," the product of the defendant, was to be brown in color, similar to plaintiff's product; (11) the word "Koke (coke)" was never copyrighted, appropriated nor adopted by the plaintiff company in the manufacture, sale or distribution of its product, "Coca-Cola"; (12) that "Coca-Cola", the product of the plaintiff company, is dispensed to the public from fountains, automatic boxes and from bottles and when dispensed in the latter form is sold in the bottle as such or may be poured from the bottle to a glass for sale and consumption; (13) that soft drinks such as "Coca-Cola" and the product intended to be sold as "Koke-Up" are usually ordered by spoken word; (14) that the defendant adopted the name "Koke-Up" with the purpose and intention of taking advantage of the reputation and good will of the complainant's product, "Coca-Cola"; (15) that the defendant intends to palm off "Koke-Up" for the complainant's product, "Coca-Cola."

The word "koke (coke)" is simply an abbreviation which the public has made of the trademark "Coca-Cola" since it is commonplace in our daily endeavor to shorten and abbreviate anything which is capable of being shortened or abbreviated, and I think it is also common knowledge that there is a marked tendency among American youth, usually to shorten and abbreviate, and it is therefore quite natural, that the purchasing public rather than use the full trademark, "Coca-Cola", make resort to the more abbreviated form "koke (coke)". Further the testimony shows conclusively that soft drinks such as "Coca-Cola" are purchased by spoken word in a vast number of instances and when a "Coca-Cola" is wanted, resort is made to the abbreviation "koke (coke)" which has come to be the nickname for "Coca-Cola."

The cases with respect to abbreviations or nicknames in the law of unfair competition are rather few and on the whole not altogether satisfactory. A review of the leading English cases show that the courts grant redress where there is a use of nicknames or an abbreviation of a trademark which have a likelihood of resulting in confusion. In Read v. Richardson, 45 L.T.N.S. 54, "Bull Dog Bottling" became known as "Dog's Head Beer", by reason of a bull-dog's head appearing on the label, and the producers of the product were granted an injunction against the use by the defendant of "a rough terrier's head" which it carried on its label. This relief was afforded on the theory that one who tries and likes beer with a bull-dog trademark may remember it as "Dog's Head" and extol its qualities under that name to one who calls for dog's head and is satisfied when given a bottle with a dog's head though it be a rough terrier's head.

In Seixo v. Provezende, L.R. 1 Ch. D. 192, the court held that the actual physical resemblance of two trademarks is not the sole question for decision for if the plaintiff's goods have from his trademark become known in the market by a part name, the adoption by the defendant of a mark or name which will cause his goods to bear the same name in the market is as much a violation of the plaintiff's rights as an actual copy of his mark.

In another case an English House had used in India a trademark for yarn which had led the natives to call for "Bhe-Hathi" (two elephant) yarn, a competing firm was enjoined from exporting yarn to India under a trademark of which the principal feature was the representation of two elephants. Orr-Ewing & Co. v. Johnston & Co., 40 L.T.N.S. 307. On the same reasoning the word "Sportsman's" accompanied by a picture of two mounted hunts-

men, used as a trademark for cherry brandy, was held to be infringed by the picture of a huntsman standing beside his horse, and the words "Huntsman's Cherry Brandy" where the proof aliunde showed that the plaintiffs' liquor had become known to the public as "The Hunter's Cherry Brandy".

The American cases are few in number and some while seemingly opposed to the view here adopted, upon careful examination, reveal no inconsistency with the position here taken. In Bayuk Cigars, Inc., v. Schwartz, D.C., 1 F.Supp. 283, 286, the court held that the term "Phillies" as applied to the plaintiff's cigars by the purchasing public, though never attached to or used by way of advertising in connection with the sale of the product, was not subject to the protection of a court of equity as against the defendant who later used the term "Phillies" in connection with his brand of cigars. However, the court says: "This result is partly based upon the idea of the court that the plaintiff has not established, by a preponderance of evidence, such a· use of the word as would entitle it to the exclusive use of the same, as against the defendant who registered this word and marketed products thereunder prior to the time the word in question was actually applied to the packages containing the plaintiff's cigars". In the instant case there can be no question of the fact that the plaintiff has established by a preponderance of evidence that the word coke is used solely in designation of the plaintiff's product, as the record will show that almost every witness so testified. In Berghoff Brewing Ass'n v. Popel-Giller Co., Inc., 50 App.D.C. 364, 273 F. 328, 329, which was solely a trademark infringement case, the court held that the use of the word "Burg" in conversation, or in written orders for goods, by the customers of the plaintiff without proof that the owner of the trademark ever applied the abbreviation to its goods, does not establish the adoption of the abbreviation as a trademark, and hence no protection would be afforded by a court of equity. The factual situation in this case differs from that of the instant case inasmuch as the court noted: "It appears that customers occasionally order 'Burgmeister' beer by the abbreviated name of 'Burg'." Here, there is no such casual or occasional use, but the record discloses that "Coca-Cola" is almost generally designated as "coke" as above indicated and that it has been so designated for at least ten years, and in addition no unfair competition is averred. In Coca-Cola Co. v. Branham et al., D.C., 216 F. 264, 266, where the defendant's product was designated simply as "Koke," the court refused to permit redress by way of injunction for alleged trademark infringement and unfair business competition in which it· was alleged that the use of the word "Koke" was an infringement of the trademark, "Coca-Cola," a case very similar to the instant case. However, the court said in this case: "If the use of the name had been observed by defendants, and it was afterwards adopted by them with the purpose and intention of taking advantage of that fact and to engage in the manufacture and sale of a beverage and call it 'Koke', and sell it 'as and for Coca-Cola,' then a case of unfair competition would undoubtedly be made out." In the instant case it is to be noted, and it is so found as a fact, that the defendant did observe the name of "Coca-Cola," realizing the value of the reputation and good will which the plaintiff company had built up, and he admittedly chose the name "Koke-Up" in order to take advantage of the reputation of the plaintiff's product. This is borne out by the plaintiff's witness, Kobre, who testified that in a conversation concerning the proposed name to be given to this product, the defendant said: "When you go in a gasoline station you think of it as 'gassing up'. You tell the attendant you want to 'gas up'. When you order a Coca-Cola you think of it in terms—'Well, let's go in and coke up.'—that he was· going to use the name 'Koke-Up' because of that derivation." And further the witness testified in connection with his conversation with the defendant: "I pointed out that profits could be made in the beverage business only if he had volume or only if the manufacturer and seller had volume. He assured us that he would get volume because the drink was advertised before its manufacture. I asked him what he meant and he stressed the fact that all of this Coca-Cola advertising would be his advertising." Further, the testimony of Kobre shows as follows:

"Q. What happened about the label, A. He showed it to us and we looked at it, and Mr. Busch says, 'When you want Coca-Cola, what do you ask for?' And I responded, 'I ask for Coca-Cola or

"coke"—usually for "coke".' Mr. Busch says, 'There it is'. I say, 'What do you mean "there it is"?' He said, 'When you ask for "coke" this is what I will give you. It is a product which is advertised before it is manufactured. Do you see what I mean?'" Therefore, from the testimony, the defendant himself made admission to the Witness Kobre that he would sell his product, "Koke-Up," as and for "Coca-Cola," and accordingly is distinguished from the Branham case, supra.

The better view, it seems to me, is that adopted in Denver Chemical Mfg. Co. v. Lilley et al., 8 Cir., 216 F. 869, 870, wherein the court says: "It being conceded, as it must be, that while appellant adopted the name 'Antiphlogistine' for its product, still if for some reason the general public has given to the product another and different name, by which it alone is known to the trade, the appellant becomes entitled to protection by injunction against one who thereafter endeavors through the adoption of such term as the public employs as synonymous for or as a secondary designation of such product, for in so doing the purchasing public may be deceived as to the article purchased, and the appellant is deprived of that trade which its industry and money have built up". I am constrained to adopt this theory of the law as applicable to the instant case, although in the case just referred to the court did not find as a fact that "Denver Mud" had been first coined and commonly applied to "antiphlogistine" and accordingly there was nothing to protect.

I feel that the abbreviation of the trademark which the public has used and adopted as designating the product of the complainant is equally as much to be protected as the trademark itself and while the name of the defendant's product is "Koke-Up" it is not to be doubted from the evidence in the case that "Koke" is the dominant word which is attempted to be impressed upon the public, since the word "Koke" on the label of the bottle of the product is much larger in size than the other lettering.

From a reading of the testimony one is driven to the conclusion that the defendant with an infinite number of names to choose from, in designating his product, chose the designation "Koke-Up" solely for the purpose of taking advantage of the good will and reputation of the plaintiff's product, which would enure to his benefit as well as to the deception of the public. One who enters a field already occupied by another as in the instant case, should be careful in the selection of a tradename or trademark, keeping far enough away from the plaintiff's tradename or trademark to avoid any possible confusion. The test it seems to me to be applicable is the one in Northam Warren Corp. v. Universal Cosmetic Co., 7 Cir., 18 F.2d 774, 775, where it was said: "Whether there is an infringement of a trade-mark does not depend upon the use of identical words, nor on the question as to whether they are so similar that a person looking at one would be deceived into the belief that it was the other; but it is sufficient if one adopts a trade-name or a trade-mark so like another in form, spelling, or sound that one, with not a very definite or clear recollection as to the real trade-mark, is likely to become confused or misled." The iniquity here is, as has been pointed out, in the similarity of sound, since soft drinks in most instances are ordered verbally.

While it might seem that there can be no unfair competition where no business or competition is already existing, or until the defendant has actually engaged in business, Raladam Co. v. Federal Trade Commission, 6 Cir., 42 F.2d 430, 436, yet the nature of the action here must be construed as a bill quia timet to enjoin the threatened unlawful use of a name, as in Standard Oil Co. of New Mexico v. Standard Oil Co. of California, 10 Cir., 56 F.2d 973. Accordingly, there can be no objection that the defendant is not presently engaged and competing in business with the plaintiff. Standard Oil Company of Maine v. Standard Oil Company of New York, 1 Cir., 45 F.2d 309; Nims on Unfair Competition and Trademarks, Third Edition, 1929, Sec. 365, page 920.

Counsel for the complainant have pressed with great vigor upon the court the case of Coca-Cola Company v. Koke Co. of America et al., 254 U.S. 143, 41 S.Ct. 113, 65 L.Ed. 189, and while it is true that in that case the court enjoined the product sold under the name of Koke, an analysis will show that the lower court, D.C., 235 F. 408, made Findings of Fact, among others, (a) that it aided persons to whom it sold its product in the substitution of its product for that of the plaintiff, and (b) that the defendant's salesmen were instructed to sell and did

sell its product as and for "Coca-Cola." Thus, in that case there was an actual finding by the court of the substitution of the defendant's product for that of the plaintiff, and an actual palming off of the defendant's product for that of the plaintiff. On appeal to the Circuit Court, it agreed with the findings of the lower court, but reversed it on the ground that the advertising accompanying the name "Coca-Cola" was so fraudulent as not to entitle it to the protection of a court of equity and it was on this question, as is definitely stated in the opinion, that the Supreme Court granted certiorari, and it was with this question that the court mainly concerned itself.

However, without any further discussion of the testimony, I think the proof clearly indicates the intention to palm off the defendant's product as that of the plaintiff, and it seems to me to permit the defendant to so do would be unconscionable and would be lending the weight of a court of equity to a deceptive matter.

The bill will be sustained and an injunction granted.