**DIGICOM, INC.,**

v.

**DIGICON, INC.**

**Civ. A. No. 70–H–294.**

United States District Court,
S. D. Texas,
Houston Division.

May 24, 1971.

Allen D. Brufsky, Brufsky, Staas & Halsey, Washington, D. C., William F. Guest, Wilson & Guest, Houston, Tex., for plaintiff.

Jim Gipple, Washington, D. C., William Andress, Jr., Cecil Woodgate, Andress, Woodgate & Hartt, Dallas, Tex., for defendant.

SEALS, District Judge.

Plaintiff in this action seeks review of a decision of the Trademark Trial and Appeal Board of the United States Patent Office. On September 15, 1966, plaintiff applied to the Patent Office for registration as a service mark of the term DIGICOM for consulting and design services in the field of computer and electronic systems. Defendant filed an opposition to plaintiff's proposed registration of DIGICOM in which defendant asserted its prior use of the term "DIGICON" to identify consutancy services provided for the programming and processing of information by means of computer and electronics systems. Defendant presented evidence that its customers had used the term DIGICON as a contraction of its trade name, Digital Consultants, Incorporated, prior to the first date of plaintiff's use of DIGICOM. The Trademark Trial and Appeal Board held that such use of DIGICON by its customers sufficiently inured to defendant's benefit to give defendant a prior right to use either DIGICOM or DIGICON as a service mark. Accordingly, the Board sustained defendant's opposition and refused registration to plaintiff.

In the case in this court plaintiff asserts that the Board erred in its determination that defendant's use of its service mark antedated plaintiff's use of DIGICOM; and, in addition, plaintiff charges defendant with trade name and trademark infringement by virtue of defendant's use of DIGICON in certain overlapping trade areas. Plaintiff seeks damages for such infringement as well as an injunction against further conflicting use. Defendant counterclaims against plaintiff for trade name and trademark infringement in those areas where plaintiff has used the term DIGICOM.

The case is before the court pursuant to the provisions of 15 U.S.C. § 1071(b). Jurisdiction is invoked under 28 U.S.C. § 1332(a) and 28 U.S.C. § 1338(b). A trial was held to the court on April 28, 1971. Defendant presented no live witnesses at the trial, relying instead on the evidence offered before the Trademark Trial and Appeal Board. Plaintiff based its contentions upon certain depositions and interrogatories, and upon the live testimony of its president, Mr. Erwin S. Teltscher.

I

Defendant, from August 2, 1965 to the present, has been in the business of providing consulting services in connection with the programming and processing of geophysical, geological, petrological and geochemical information by computer and electronic systems. From August 2, 1965 to November 29, 1967, the defendant did business under the tradename Digital Consultants, Incorporated.

From August 2, 1965 to November 29, 1967, there were sporadic instances of use by customers of defendant to refer colloquially to the defendant by the term DIGICON. This use was derived from an abbreviation of the then corporate name of the defendant, Digital Consultants, Inc. Mr. Jack Wallner testified that after the incorporation of defendant, he, as a geophysicist for a company which had purchased services in connection with computerized analysis of seismic exploration data, did refer to the defendant by the name of DIGICON during the period August 1965 through early 1966 and that the name had been used within his organization. Another witness, an official of an oil company, also

testified that his company had done business with defendant since 1965, and that since that time, he had referred to defendant as DIGICON. Telegrams dated December 21, 1966, and May 17, 1966 were also submitted to show that the term DIGICON was used at that time to refer to Digital Consultants, Inc. by other customers of defendant.

Defendant admittedly discouraged any use by its customers of the term DIGICON until the summer of 1967, and until that time never entertained any attempt to adopt the term as a service mark and trade name.

On or about November 29, 1967, however, defendant changed its name from Digital Consultants, Incorporated, to Digicon, Inc. In the summer of 1967 defendant itself began use of the trade name Digicon, Inc. and service mark DIGICON to identify the source of its services.

## II

The testimony of plaintiff's president, Mr. Teltscher, indicates that, because of his interest in digital communication techniques, he was frequently referred to by colleagues as "Mr. Digicom" while he was still employed at Ford Instrument Company. Desiring to found his own business, Teltscher approached Mr. John Douglas, a Ford sales representative assigned to solicit federal contracts. Mr. Douglas testified that Teltscher instructed him in 1963 and 1964 to employ the term DIGICOM to identify Teltscher's proposals to the National Aeronautics and Space Administration and to the Department of the Navy.

Mr. Milton Salmon testified that, as an official of the General Bronze Corporation in 1965, he dealt with Teltscher on numerous occasions, and that in June 1965, Teltscher informed him "that he was assembling a group of top engineers and planned to incorporate under the name of DIGICOM to perform consultant services."

Mr. Sol Roberts, president and chairman of the Board of Sherri Lynn Company, Incorporated, states that, as early as 1964, Teltscher was referring to his services as "Digicom Consultants."

Mr. Joseph Breuer testified that, in early 1965, Teltscher approached him with a project in which Breuer was requested to participate and for which Teltscher stated that funds would be solicited under the name of DIGICOM.

The testimony of Dr. Edward C. Raab indicates that Teltscher specifically intended to form a consulting firm in 1964–65, and that this firm was to be known as DIGICOM.

Teltscher employed an accountant, Mr. Martin Goldhirsch, in June, 1965, for advice on establishing the new business. Goldhirsch stated that he advised Teltscher at that time to register the company name, "and I think it is very logical that you have chosen to use the name DIGICOM since you are already known by that name by your associates."

Plaintiff's books were set up in June, 1965, and thereafter Teltscher actively solicited other consultant work under the name of "Digicom Associates," in the hope of fulfilling his goal of entering the consultant business on a full-time basis. In February, 1966, Teltscher obtained a sub-contract from Infotran, Inc., involving a study program for evaluation of baseband, carrier and multiplexing techniques for use as data transmission links in connection with a prime contract Infotran had obtained from NASA. Since DIGICOM had not yet been registered officially with the corporate records of the State of New York Teltscher's name was incorporated into the initial proposal on the basis that he would render personal services in the event of a contract award. DIGICOM was officially incorporated and registered in the corporation records of the State of New York in June 1966. At that time, a protracted discussion took place between Teltscher and Infotran as to whether the contract awarded by NASA to Infotran should be amended so that Teltscher's services would be reflected in the contract documents as being per-

formed via DIGICOM. Teltscher and Infotran drafted a memorandum, dated June 14, 1966 to that effect for submission to NASA. It was finally agreed, however, that it was not necessary to change Infotran's contract with NASA to incorporate the fact that services were now being performed by DIGICOM, but that Infotran in the future would refer to Teltscher's services as being rendered via DIGICOM. All subsequent communications between Infotran and Teltscher indicate that such in fact took place.

Since June, 1966, plaintiff has been engaged under the mark and trade name DIGICOM in the full-time active solicitation of Government contracts at various federal installations throughout the United States.

### III

Both plaintiff and defendant agree that the marks DIGICOM and DIGICON are substantially identical and are used in connection with services which could well emanate from the same source. The only question presented, then, is whether defendant can claim a prior, lawful property right in its mark, DIGICON, so that the registration by plaintiff of DIGICOM would cast a cloud upon the right of defendant to continue use of its mark.

■ Defendant contends, and the Board found, that defendant has a property right in its service mark DIGICON which predates September 15, 1966. The court is persuaded that, on the record developed before the Board, defendant failed to prove its adoption of the DIGICON mark prior to September 15, 1966. The Board did not, however, base its decision on defendant's own use of its mark, but on usage by defendant's customers. The Board then concluded that, on the basis of the Coca Cola cases, Coca-Cola Co. v. Christopher, 37 F.Supp. 216 (E.D.Mich., 1941); Coca-Cola Co. v. Los Angeles Brewing Co., 1 F.R.D. 67 (S.D. Cal., 1939); Coca-Cola Co. v. Los Angeles Brewing Co., 46 U.S.P.Q. 552 (Com'r Pats.1940), usage by defendant's cus-

tomers is tantamount to adoption by defendant. The Board found that

"the term DIGICON was used by customers for opposer's services to refer to opposer prior to any date of use of DIGICOM to which applicant may be entitled. A good will in the term DIGICON resided in opposer as the result of such use. And it is our opinion that purchasers of the services here involved would have well supposed at the time applicant first used or applied for the registration of DIGICOM for its services that such services originated with the party known by the name DIGICON at those times."

■ The Coca Cola cases represent a special exception to the general rules that 1) mere adoption is insufficient to establish a protectible trademark right; 2) some actual use by the claimant of the right is required; 3) it is necessary that the claimant market goods with the affixed designation; and 4) there must be an intention by claimant to continue to prises, Inc. v. Richardson, cmfwcmfwe use such designation. Drexel Enterprises, Inc. v. Richardson, 312 F.2d 525 (C.A. 10, 1962), Bayuk Cigars, Inc. v. Schwartz, 1 F.Supp. 283 (D.N.J., 1932), Spectrolab, Inc. v. Spectralab Instruments, 131 USPQ 395 (TTAB, 1961).

■ In one of the Coca Cola cases, a district court found

"that the defendant with an infinite number of names to choose from, in designating his product, chose the designation 'Koke-Up' solely for the purpose of taking advantage of the good will and reputation of the plaintiff's product, which would inure to the benefit as well as to the deception of the public. One who enters a field already occupied by another as in the instant case, should be careful in the selection of a tradename or trademark, keeping far enough away from the plaintiff's tradename or trademark to avoid any possible confusion." Coca-Cola Co. v. Busch, 44 F.Supp. 405, 410 (E.D.Pa., 1942).

In the case at bar, no evidence was presented that plaintiff even knew of the existence of the use by defendant's customers of the DIGICON label. Certainly defendant has never suggested that plaintiff was purposefully attempting to profit by any good will defendant might have established in the DIGICON mark.

Furthermore, although the court in *Busch, supra,* found "that the word 'koke (coke)' was given to the product 'coca-cola' solely by the purchasing public," the court found also that coca-cola "is widely advertised and well-known to the trade and public alike." *Busch, supra,* at 407–408. In the instant case, on the other hand, defendant never captured more than ⅓ of one percent of a specialized market. In addition, defendant's evidence indicates, at best, sporadic use of the term DIGICON by defendant's customers. Nowhere is it shown that defendant's customers, or even a significant number of them, so inevitably associated the term DIGICON with the services of defendant that such customers would be hopelessly misled by another company's use of a similar mark.

■ The court finds further that, even if the Trademark Trial and Appeal Board's conclusions regarding the applicability of the *Coca Cola* cases are accepted without question, the evidence presented in this court indicates that plaintiff acquired rights in DIGICOM prior to the earliest date on which defendant asserts that its right in DIGICON accrued. The court is persuaded that Mr. Teltscher adopted the term DIGICOM prior to August 2, 1965; that he intended to continue use of the term as a service mark; and that such term was so used to designate the origin of the services to be rendered.

### IV

■ The Board's findings of fact should be accepted by the court as controlling, unless clearly erroneous or unless the contrary is established by new evidence which in character and amount carries thorough conviction. The Court of Appeals has held that

"the rule that a finding of fact by the District Court, sitting without a jury, may be set aside on appeal only if it is clearly erroneous, Rule 52(a), 28 U.S.C.A., applies to patent and trademark cases under 35 U.S.C.A. § 146. * * * In patent and trademark cases 'a finding of fact by the Patent Office as to priority of invention or confusing similarity of marks must be accepted as controlling, unless the contrary is established by evidence "which, in character and amount carries thorough conviction." ' * * * This rule applies though the case is heard de novo in the District Court." Aloe Creme Laboratories, Inc. v. Texas Pharmacal Co., 335 F.2d 72, 74 (C.A. 5, 1964).

Plaintiff has introduced substantial new evidence in this court which clearly indicates that the first full-time use of the mark and tradename DIGICOM by the plaintiff occurred in June 1966; since 1963, however, there were many instances of use of the mark by plaintiff in solicitation of business on at least a part-time basis, and such use was sufficient to enable plaintiff to have acquired a property right prior to any date which can be relied on by defendant. In any event, the evidence clearly and unequivocally shows that defendant did not itself adopt and use the mark DIGICON or the tradename "Digicon, Inc." prior to the first formal, full-time use of DIGICOM by plaintiff in June, 1966.

### V

Plaintiff and defendant agree that whichever party is found by the court to have first established its rights in its respective trademark must be regarded as the rightful registrant on an unrestricted basis and on a nationwide scale. The Court of Appeals has held that the

"language of the Federal Trademarks Act, as well as its legislative history, shows an intent to provide nationwide protection for expanding businesses." John R. Thompson Co. v. Holloway, 366 F.2d 108, 114–115 (C.A.5, 1966).

Based on the probable expansion of plaintiff's consulting services, and particularly in view of its extensive volume of business with the federal government, the court is convinced that plaintiff should be granted an unrestricted registration.

## VI

Plaintiff has sought damages for defendant's past trademark infringements by defendant's use of DIGICON. Plaintiff has presented no evidence as to the amount of damages, and the court will therefore grant to plaintiff an additional period in which to submit evidence on this issue. Plaintiff will be granted immediately, however, an injunction to restrain defendant's further use of the trade name or trademark DIGICON, DIGICOM, or the equivalent, in any State or possession of the United States. Clerk will file this Memorandum Opinion and provide counsel with true copies.