## CONSOLIDATED COSMETICS et al. v. NEILSON CHEMICAL CO.

### No. 7927.

United States District Court
E. D. Michigan, S. D.
Dec. 15, 1952.

Joseph A. Cassese, Detroit, Mich., and James R. McKnight and Robert C. Comstock, Chicago, Ill., for plaintiff.

Jorgensen & Alexander, Detroit, Mich., for defendant.

KOSCINSKI, District Judge.

This is a suit for trade-mark infringement and unfair competition in which plaintiffs also seek reversal of a Patent Office decision accepting for registration defendant's application for an alleged infringing trade-mark.

On October 13, 1945 defendant filed an application in the United States Patent Office, Serial No. 489,918, for registration of its trade-mark Rustaboo for a chemical and detergent preparation for cleaning and preparing metal surfaces for painting. Plaintiff, Consolidated Cosmetics, as marketer of cosmetics, toilet soap, and perfumes under the trade-mark names Tabu and Taboo, filed opposition No. 25494 thereto, entitled Consolidated Cosmetics v. Neilson Chemical Company, to prevent registration of defendant's proposed trade-mark on its said application.

The opposition was considered by the Examiner of Interferences on the opposer's claim of confusion as the sole statutory ground for negativing applicant's right of registration. In support of its contention that products of the respective parties are goods of the same descriptive properties and can be used for the same purposes, the opposer presented evidence of an actual experiment made with its Tabu toilet soap on a piece of rusted metal surface; rebuttal evidence included similar tests with defendant's product.

The Examiner determined that opposer's products other than Tabu toilet soap were so widely dissimilar in every essential particular as not to constitute goods of the same descriptive properties and that a likelihood of confusion in trade within the contemplation of the statute could not arise unless products with which the marks of the parties are used possess the same descriptive properties. He further determined that opposer's Tabu toilet soap could not fulfill the function of applicant's goods and that applicant's goods included the necessary chemical agent for removal or neutralization of all surface rust in order to properly prepare rusted metal objects for painting, while toilet soap, which lacks this ingredient, serves merely as a lubricant for abrasive action and its use leaves all but surface rust undisturbed. He concluded that Tabu toilet soap and Rustaboo are dissimilar in composition and form, are used for substantially unrelated purposes, are sold through different trade channels and to different classes of purchasers, and the differences with respect to the goods of both parties and those present in the marks used upon them are cumulative in their effect and amply sufficient to obviate any reasonable likelihood of confusion in trade or deception of purchasers. He dismissed the opposition and adjudged the applicant, defendant herein, entitled to registration of his trade-mark Rustaboo.

Opposer appealed this ruling to the Commissioner of Patents who concurred in the findings of the Examiner and affirmed his decision.

This suit was thereupon filed under Title 35 U.S.C. § 63, and Title 15 U.S.C. § 89, as amended by Title 15 U.S.C.A. § 1071, for equitable relief by way of injunction to restrain defendant from infringing plaintiff's registered trade-marks and from otherwise committing any acts of unfair competition, for an accounting of gains and profits by defendant and assessment of damages against it, and for reversal of the Patent Commissioner's decision dismissing plaintiff's opposition in the proceedings had before him.

During the pendency of this suit, the trade-marks Tabu and Taboo were assigned by the Consolidated Cosmetics to Les Parfums de Dana, Inc., and the assignee was added as party-plaintiff herein.

It is plaintiffs' contention in the present action that the opposition should have been sustained in the Patent Office on the grounds 1) that Rustaboo is confusingly similar to plaintiffs' trade-marks Tabu and Taboo, 2) that Rustaboo and plaintiffs' soap and other chemical and detergent preparations are goods of the same descriptive properties, 3) that defendant merely placed Rust, a descriptive word without trade-mark significance, in front of

plaintiffs' trade-mark Taboo, 4) that Rust is used by over fifty different persons and companies on detergents and other goods of the same descriptive properties so that defendant relied on Taboo as the only part of Rustaboo capable of distinguishing its goods from others using Rust, and defendant has, therefore, appropriated all of plaintiffs' trade-mark Taboo and should not be permitted to register that mark, either alone or with the word Rust, 5) that goods of both plaintiffs and defendant are sold in the same places, to the same customers, and have similar uses, 6) that defendant abandoned its use of the trade-mark Rustaboo, 7) that defendant did not have exclusive use of the trade-mark Rustaboo and is therefore not entitled to registration, which is only granted to an exclusive user, and 8) that the trade and purchasing public have acquiesced in plaintiffs' exclusive rights to the trade-marks Tabu and Taboo.

Defendant denies these claims and challenges plaintiffs' right to exclusive use of their trade-marks on any but the specific goods or goods associated with the specific goods set forth in the trade-mark certificates, as well as their claim that Tabu and Taboo has been associated solely with plaintiffs' products inasmuch as identical or closely-similar marks have been previously registered by others.

At the trial the issues were submitted upon a record of all proceedings had in the Patent Office, as well as depositions subsequently taken. All physical and documentary exhibits introduced in earlier proceedings were made available to this court as part of the record of this case.

On the basis of all the evidence before it, this court makes the following

### Findings of Fact.

1. Plaintiffs, as well as their predecessors, were engaged for many years in the creation, distribution, and sale of cosmetics, toilet goods and perfumes, and have used the trade-marks Tabu and Taboo on such products as owners of the following registered trade-marks:

a) No. 314,493, registered July 3, 1934, for Tabu, for lipsticks and rouge, in Class 6—Chemicals, medicines and pharmaceutical preparations;

b) No. 343,897, registered March 9, 1937, for Tabu, for anti-perspirant, lipstick, rouge, face powder, eyelash and eyebrow mascara, creams for the hands and face, preparations for skin, hair and finger nails, and perfumes, in Class 6—Chemicals, medicines and pharmaceutical preparations; and

c) No. 393,970, registered March 10, 1942, for Tabu, for toilet soap, in Class 4—Abrasive, detergent and polishing materials.

2. Plaintiff, Les Parfums de Dana, Inc., is now admittedly the owner of these trade-marks.

3. Plaintiffs' goods bearing said trade-marks have been extensively and nationally advertised in such magazines as Harper's Bazaar, Vogue, Beauty Fashion, Town and Country, and in newspapers throughout the country. The pictorial representations and descriptive material used in the advertisements suggest a purpose to attract the interest and win approval for the products primarily of women with discriminating taste in toilet preparations.

4. Tabu and Taboo products, including Tabu toilet soap, are highly scented, attractively packaged, and sold generally in beauty salons as well as all leading drug and department stores. Sales of the products are also extensive and national in scope.

5. A flacon containing one-eighth of a fluid ounce of Tabu perfume sells for $3.25, according to the price tag marked on a package of this item submitted in evidence. Tabu toilet soap sells for approximately $2.00 a box of three cakes.

6. Plaintiffs' products do not include any soaps or detergents other than Tabu toilet soap.

7. Containers with Tabu and Taboo products which are specially boxed, bear the legend of their source as emanating from plaintiffs.

8. Defendant manufactures and markets a liquid industrial and household product under the name of Rustaboo which is a chemical and detergent preparation for

cleaning and preparing metal surfaces for painting; it contains metal-attacking, rust-inhibiting and neutralizing agents and is composed of phosphoric acid, grease solvents, and wetting agents.

9. Rustaboo has an unpleasant odor; it is poisonous and toxic and contains tissue-destroying agents. It is classified by postal authorities as a corrosive and hazardous liquid. Phosphoric acid, one of its ingredients, is harmful and dangerous to the skin and other surfaces.

10. Rustaboo is advertised in commercial journals and is sold, in plain, soft-glass bottles, in hardware stores and hardware departments of department stores. It has never been sold in drug stores, heretofore, but conceivably could be sold in drug stores which carry hardware items.

11. Rustaboo sells for approximately 50¢ for a minimum-sized, four-ounce bottle. It is sold also in containers which vary from six-ounce to one-gallon capacity.

12. Rustaboo bears a label which clearly designates it as a rust-remover and metal cleaner and gives the name of defendant as manufacturer, or its distributors, or both. It is common practice to use steel wool in applying this liquid for cleaning metal and removing rust and this method of application is recommended on the label.

13. The evidence established use of the marks Tabu and Taboo by plaintiffs on the goods described in the trade-mark registrations since a date prior to any date of use claimed by defendant, as well as substantial public recognition as to plaintiffs' perfumes and cosmetics.

14. Products of both parties contain chemicals and, hence, may be referred to as chemicals. Plaintiffs' specific product Tabu toilet soap and Rustaboo may also be, generally, classified as detergents since they both meet the definition of that term given in Webster's New International Dictionary, 2d Ed., as "a cleansing agent, or solvent, as water or soap." But for this common general classification, the dissimilarities in the two products, such as appearance, composition, price, packaging, media through which they are advertised, counters in which they are displayed and over which they are sold, the class of purchasers thereof, as well as the intended uses of each, are glaringly obvious and confusion between the two products themselves in the minds of the purchasing public is not only unlikely but improbable.

15. In devising an appropriate name for its product defendant intended the name to suggest that the product so named frightens away rust and is, in effect, a rust-chaser. The origin of the name could be traced to a combination of the words Rust and Boo, with addition of a vowel for euphonious effect. This combination represents the aim of defendant in selecting a name more exactingly than the combination of Rust and Taboo, the origin which plaintiffs attribute to Rustaboo. In Rustaboo, attention is immediately focused on the initial syllable, Rust, and a clue is supplied that the product performs some function in relation to rust.

Taboo and its variant form Tabu are words of the English language found in Webster's New International Dictionary, 2d Ed., and have a recognized pronunciation, with stress on the last syllable. In pronouncing Rustaboo it would be natural to place the accent on the initial syllable, though coined names of products are not always uniformly pronounced by all members of the purchasing public; in any event, stress on the last syllable in Rustaboo would be unlikely. This difference in stress, alone, renders the sound of each name quite dissimilar. A careful, side-by-side scrutiny, reveals a common suffix, but all similarity ceases at this point. In fact, the common suffix Aboo is present not only in Taboo and Rustaboo, but in at least one other well-known product, Bugaboo, and presence of the letter "t" in front of this suffix is coincidental since Rust ends with that letter, while Bug in Bugaboo ends with another consonant. Considering Rustaboo in its entirety, however, as a single, coined word, it is not similar, phonetically or in appearance, to plaintiff's marks Tabu and Taboo and is unlikely to cause confusion with those

marks or to lead the average purchaser to believe that Rustaboo emanates from the same source as Tabu and Taboo products.

16. It is true that Rustaboo can be dissected into the word Rust and the suffix Aboo or the vowel "a" plus the word Boo. Rust is a descriptive word by itself; the suffix Aboo is meaningless; and the word Boo is not descriptive but is used in a fanciful and arbitrary manner in relation to the product. Again, however, the name Rustaboo must be examined in its entirety as a single, coined or manufactured word, and as such, it is not descriptive.

17. The evidence established the fact that defendant has continued to manufacture and sell Rustaboo ever since it was first placed on the market, except when raw materials were unavailable, but that sales have not been actively promoted during pendency of legal proceedings involving registration of the trade-mark for its name. It fails to establish, on the other hand, any intent on the part of defendant to discontinue use of such trade-mark.

18. The evidence failed to establish use of the name Rustaboo by persons other than defendant and its authorized distributors.

### Conclusions of Law

1. Plaintiffs challenge the Patent Commissioner's dismissal of their opposition to defendant's application for trade-mark registration on the ground that, having held products of the respective parties to be merchandise of the same descriptive properties, the opposition should have been sustained and registration of the trade-mark Rustaboo refused. They quote from the opinion of the Examiner of Interferences, whose ruling was affirmed by the Commissioner: "It is probably true that the goods of the parties possess the same descriptive properties in a broad sense, in that both are detergents." The Examiner further concluded, however, "that the products are otherwise dissimilar in composition and form, are used for substantially unrelated purposes, and so far as the record indicates are sold through different trade channels and to different classes of purchasers." The affirming opinion of the Commissioner also expresses a view that toilet soap and defendant's preparation differ radically in every respect, and that the goods of the respective parties are so different in their purpose, use, and channels of sales that there is not even a remote likelihood that confusion might result from the concurrent use of the marks of the parties upon these goods. These conclusions clearly contradict the effect of the Patent Office language as interpreted by plaintiffs.

[1–3] 2. The function of a trade-mark is to point out distinctively the origin or ownership of an article to which it is affixed and to distinguish goods of one person from those of another. Elgin Nat. Watch Co. v. Illinois Watch Case Co., 179 U.S. 665, 21 S.Ct. 270, 45 L.Ed. 365. But "When the mark is used in a way that does not deceive the public * * *. It is not taboo." Prestonettes, Inc. v. Coty, 264 U.S. 359, 368, 44 S.Ct. 350, 351, 68 L.Ed. 731, quoted in Champion Plug Co. v. Sanders, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386. And the mere fact that plaintiffs have adopted and used the trade-marks on their goods does not prevent the adoption and use of the same trade-mark by defendant or any other persons on articles of a different description. American Steel Foundries v. Robertson, 269 U.S. 372, 46 S.Ct. 160, 70 L.Ed. 317; Goldsmith Bros. v. Atlas Supply Co., 148 F.2d 1016, 32 C.C.P.A., Patents, 1001; McKesson & Robbins v. Isenberg, 167 F.2d 510, 35 C.C.P.A., Patents, 1095. Registration of the trade-mark protects a consumer from misrepresentation as to the source or origin of the product and also protects the owner of the trade-mark from its use by another to palm off his goods as those of the trade-mark owner. In other words, the main objective is prevention of confusion, either with reference to the goods themselves, or their source. The Commissioner not only found that goods of the respective parties were not merchandise of the same descriptive properties but he also found dissimilarities in the marks used upon such goods.

3. The present case, according to the statutes under which plaintiffs are proceeding, is an independent action in

which the questions are tried de novo, upon all the evidence, new and old. Century Distilling Co. v. Continental Distilling Co., 3 Cir., 106 F.2d 486, certiorari denied 309 U.S. 662, 60 S.Ct. 581, 84 L.Ed. 1010. But the decision made in the Patent Office between the contesting parties concerning the registrability of defendant's trade-mark must be accepted as controlling on that question in a subsequent suit between the same parties to determine rights of the parties under registered trade-marks, unless the contrary is established by evidence which in character and amount carried through to a conviction. Solventol Chemical Products v. Langfield, 6 Cir., 134 F.2d 899; certiorari denied 320 U.S. 743, 64 S.Ct. 44, 88 L.Ed. 441. However, this court read the entire record of the proceedings before the Commissioner, as supplemented by the additional evidence in subsequent depositions and has examined all physical and documentary exhibits before it, to make an independent appraisal and evaluation of such evidence on the issues before the Commissioner, 1) are goods of the parties merchandise possessing the same descriptive properties, 2) is there any likelihood of confusion between products of the parties or their source, 3) did defendant have exclusive use of the name Rustaboo, 4) did defendant abandon its trade-mark, and 5) is Rustaboo descriptive and, therefore, unregistrable as a trade-mark.

■ 4. Filing of defendant's application for registration on Rustaboo in Class 4—Abrasive, detergent and polishing materials, which is the same class previously assigned to plaintiffs' trade-mark, Tabu on toilet soap, is not determinative of the descriptive properties of these goods. Such classification is intended merely for the convenience of the Patent Office in the administration of its business, Title 15 U.S.C.A. § 1112 and Rules of Practice in Trade-Mark Cases promulgated thereunder, Title 37 C.F.R., Part 100, Sec. 100.161, 15 U.S.C.A. Appendix, and is not binding on the federal courts. L. E. Waterman Co. v. Gordon, 2 Cir., 72 F.2d 272. Many of the separate categories into which goods and services covered by trade-marks have been divided by the Commissioner are so general as to encompass, within a single class, products which are remote in similarity to each other and would not be considered goods of the same descriptive properties.

■ 5. In determining whether goods possess the same descriptive properties each case must be decided on its own facts and the court may consider such elements as similarities of appearance and use of the goods, whether goods are originally sold in the same kind of retail stores, ordinarily produced by the same manufacturers, whether goods have common purchasers, and any other data which tends to identify the products as similar or dissimilar. Dwinell-Wright Co. v. National Fruit Co., 1 Cir., 140 F.2d 618.

■ 6. Successful application of Tabu toilet soap to partially remove rust from metal surfaces, a use not intended for it, does not endow it with the descriptive property of a rust-remover or a substance to prepare metal surfaces for painting, the function for which Rustaboo was specifically manufactured. Any limited or incidental use has no material bearing on that issue. Proctor & Gamble Co. v. Sweets Laboratories, Inc., 137 F.2d 365, 30 C.C.P.A., Patents, 1294.

■ 7. Plaintiffs failed, by competent evidence, to prove the allegations in their opposition respecting similarity of the descriptive properties of their products and defendant's Rustaboo. On the contrary, the evidence before the Commissioner established radical dissimilarities between these goods and improbability of any confusion as to their identity.

■ 8. Plaintiffs' trade-marks protect them against not only their use upon the articles to which they have applied the marks, but upon such other goods as might naturally be supposed to come from them. Telechron Inc., v. Telicon Corp., D.C., 97 F.Supp. 131. But the evidence in this case convinces this court that a product such as defendant's Rustaboo would never be con-

sidered as originating with plaintiffs and that reasonable extension of plaintiffs' business would not include goods similar to defendant's Rustaboo.

9. In comparing similarity of trade-marks, factors such as similarity in form, appearance, spelling, sound, and ideas connoted by them, may be considered, and whether one with an indefinite recollection of the real mark would likely be misled. Brooks v. Great Atlantic & Pacific Tea Co., 9 Cir., 92 F.2d 794; Northam Warren Corporation v. Universal Cosmetic Co., 7 Cir., 18 F.2d 774; Coca-Cola Co. v. Busch, D.C., 44 F.Supp. 405; Brown-Forman Distillery Co. v. Arthur M. Bloch Liquor Importers, 7 Cir., 99 F.2d 708. The test is not a probing side-by-side comparison by experts but the impression the mark is likely to make on ordinary purchasers. Baker v. Master Printers Union of New Jersey, D.C., 34 F.Supp. 808. Furthermore, a trade-mark is not to be resolved into its component parts and each part analyzed separately, but the trade-mark should be considered in its entirety. Food Fair Stores v. Food Fair, 1 Cir., 177 F.2d 177.

10. Applying these principles of law to the facts in this case, the differences in the marks of the parties, particularly if considered with the dissimilarities in the products to which they are attached, are amply sufficient to obviate any reasonable likelihood of confusion in trade or deception of the purchasers.

11. Under the trade-mark laws a trade-mark is deemed to be abandoned if it has been discontinued with intent not to resume its use. Intent not to resume may be inferred from circumstances and nonuse for two consecutive years shall be prima facie abandonment. 15 U.S.C.A. § 1127 and cases cited thereunder. Plaintiffs failed to establish abandonment of the trade-mark Rustaboo by defendant, under the facts as found by this court.

12. Plaintiffs have also failed to establish that defendant did not have exclusive use of its trade-mark Rustaboo.

13. That the name Rustaboo is capable of division and the word Rust, a descriptive word, may be segregated therefrom, does not render defendant's trademark objectionable under Title 15 U.S.C.A. § 1052, prohibiting registration of trademarks which are merely descriptive of the goods to which they are affixed. A combination of words may constitute a trademark though some or each of the parts, standing alone, would not constitute a trade-mark. It is the combination which makes the trade-mark. Caron Corp v. Conde, Ltd., 126 Misc. 676, 213 N.Y.S. 735. Even a combination of words, all of which components are descriptive, into a single, coined, arbitrary, and fanciful word, may be a valid technical trade-mark. Henry Muhs Co. v. Farm Craft Foods, D.C., 37 F.Supp 1013.

14. The Commissioner of Patents correctly determined the issues before him and dismissal of Opposition No. 25494 as well as acceptance for Application No. 489,918 for registration of the trade-mark Rustaboo was proper and warranted under the circumstances.

15. Plaintiffs invoke the equity powers of this court to consider factors beyond those to which they claim the Commissioner of Patents was limited in determining registrability of defendant's trademark and plaintiff's opposition thereto, as the Commissioner could not consider the equities or the doctrine of unfair competition. Whether an infringement suit unaccompanied by claims of unfair competition, filed under the statute, affords more than certain advantages to a defeated party in Patent Office proceedings, such as an opportunity to present new evidence in a trial de novo and greater scope in appeal, as claimed by plaintiffs, is questioned, but need not be determined here. An equity court, in a proper case, does have jurisdiction over matters of unfair competition, not within the province of the Commissioner. Plaintiffs not only rely on the same allegations for their charges of infringement as well as those of unfair competition, but allege jurisdictional

grounds, so that their claims of unfair competition are properly before this court.

17. The essence of the wrong in trade-mark infringement and unfair competition, however, is identical. According to the decision in Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 413, 36 S.Ct. 357, 60 L.Ed. 713, the essential element in both consists in the sale of the goods of one manufacturer or vendor for those of another. See also Hemmeter Cigar Co. v. Congress Cigar Co. Inc., 6 Cir., 118 F.2d 64; James Heddon's Sons v. Millsite Steel and Wire Works, D.C.Mich., 35 F.Supp. 169. Where confusion is unlikely, either as to identity of the products or their source, there is no opportunity to palm off one's products as those of another.

18. Cases from other jurisdictions cited by plaintiffs to support their argument that equity courts will prevent appropriation of another's trade-mark though likelihood of confusion is lacking, have been considered. A careful perusal of some of these decisions reveals that, in the last analysis, the decision turned on possibility of confusion. The connection between products there involved, though remote, was found sufficient to imply that the original user either branched out his business into such remotely associated field, or at least placed his stamp of approval on the products marketed by the new user of the trade-mark. In other cases the courts seemed to take cognizance of a preconceived plan and deliberate attempt by the new user to benefit by the excellent reputation established by the original user. Lack of intent in technical trade-mark infringement has been uniformly held unessential, but the same unanimity of opinion is not apparent in unfair competition cases and many courts have, at least, given some weight to a patent attempt to deceive the public or to benefit in some manner by hitching a free ride on the reputation and good will developed by another. None of the factors present in the cases cited by plaintiffs are present in the instant case.

19. Plaintiffs also advance the theory of dilution for consideration by the court, contending that the value of their trade-marks, built up through extensive advertising and a good business reputation over a period of many years, would be gradually diminished by dilution, even though use of the mark by others could not lead to any confusion. The statute affords to an owner of a registered trade-mark protection against use by others, without his consent, of reproductions, counterfeits, copies or colorable imitations of his mark on merchandise of substantially the same descriptive properties. The dilution doctrine operates to give him the same protection against use of his mark by others on goods of different descriptive properties. But the marks must be deemed similar before the doctrine has any application. Pro-Phy-Lac-Tic Brush Co. v. Jordan Marsh Co., 1 Cir., 165 F.2d 549. This doctrine has been sparingly applied and only in situations where marks were identical or obvious simulations.

In view of this court's determination that the marks here involved are not similar within the meaning of the statute, the doctrine is also inapplicable in the case at bar.

20. Defendant's trade-mark Rustaboo does not infringe plaintiffs' marks. Taboo and Tabu.

21. Defendant has not committed any acts of unfair competition with reference to plaintiffs and their said trade-marks. Taboo and Tabu.

#### Decree.

It Is Hereby Ordered, Adjudged and Decreed:

That this cause be dismissed, with prejudice, plaintiffs having failed to prove the allegations contained in the complaint filed herein, charging defendants with trade-mark infringement and unfair competition.