**MONTGOMERY ENVIRONMENTAL CO-ALITION CITIZENS COORDINATING COMMITTEE ON FRIENDSHIP HEIGHTS et al., Appellants,**

v.

**WASHINGTON SUBURBAN SANITARY COMMISSION et al.**

No. 78–1730.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 3, 1979.

Decided May 30, 1979.

---

Herbert L. Fenster, Washington, D. C., with whom Joe G. Hollingsworth, Washington, D. C., was on brief, for appellants.

Curtis E. von Kann, Washington, D. C., with whom J. Eugene Cleary, Hyattsville, was on brief, for appellee, Washington Suburban Sanitary Commission.

Richard E. Rice, Asst. Atty. Gen., State of Maryland, Annapolis, Md., for appellee, Maryland Dept. of Health and Mental Hygiene, Water Resources Administration, Governor Mandel.

Louis P. Robbins, Corp. Counsel, Richard W. Barton, John C. Salyer, Frederick F. Stiehl, Asst. Corp. Counsel, Washington, D. C., for appellee, District of Columbia.

Before BAZELON, TAMM and WILKEY, Circuit Judges.

Opinion for the Court filed by BAZELON, Circuit Judge.

BAZELON, Senior Circuit Judge:

For the second time,[1] we review a decision of the district court arising out of a complaint by the Montgomery Environmental Coalition (MEC).[2] MEC seeks to enjoin the Washington Suburban Sanitary Commission (WSSC) from exceeding its allotted share of the sewage treatment capacity at the Blue Plains Sewage Treatment Plant (Blue Plains).[3] MEC alleges that excess flows from WSSC have increased the discharge of pollutants from Blue Plains, which in turn contribute to a violation of the promulgated water quality standards for the Potomac River. Because we believe that the commencement of EPA proceedings to issue Blue Plains a National Pollution Discharge Elimination System (NPDES) permit vests primary jurisdiction over this issue in EPA, we affirm the order of the district court dismissing this action.

## I.

The long and tortured history of this litigation need be rehearsed only briefly. In 1973 MEC filed an action in district court against EPA, WSSC, the Mayor of the District of Columbia, the Governor of Maryland, the Montgomery County Executive, and several other governmental agencies. MEC alleged that WSSC was exceeding the volume of sewage allotted to it for treatment at Blue Plains, an allotment based on agreements among the affected jurisdictions. MEC alleged that, as a result of the excess sewage flows, Blue Plains was discharging raw and inadequately treated sewage into the Potomac, degrading the quality of the water in the Potomac below the water quality standards established pursuant to the Water Quality Act of 1965, P.L. 89–234, 79 Stat. 903 (the 1965 Act).[4]

After some procedural shuffling, a hearing was held on various defendants' motion to dismiss MEC's suit. Judge Smith denied the motion to dismiss of several defendants. *MEC v. Fri*, 366 F.Supp. 261 (D.D.C.1973). He held that the water quality standards promulgated under the 1965 Act constituted a "floor level of quality until the stiffer effluent limitations of the 1972 Act can be implemented," and that the discharge of a pollutant that contributes to the violation of a water quality standard would violate 33 U.S.C. § 1311(a). *Id.* at 265. In Judge Smith's view, this violation could be abated through a citizens' suit pursuant to

---

1. Our previous decision, *Montgomery Environmental Coalition v. Washington Suburban Sanitary Commission*, No. 75–1389 (D.C.Cir. May 10, 1976), remanding this case to the district court, is unreported.

2. Citizens Coordinating Committee on Friendship Heights is also an appellant in this action.

3. Specifically, MEC sought to limit WSSC's flows to Blue Plains through the imposition of a sewer hook-up moratorium.

4. Appellants' suit was filed after the effective date of the Federal Water Pollution Control Act Amendments of 1972, P.L. 92–500, 86 Stat. 816 (the 1972 Act). The general plan of the 1972 Act focuses on effluent discharge limitations, see 33 U.S.C. § 1311 (1976), in contrast to the 1965 Act, which was primarily concerned with ambient water quality standards. However, the 1972 Act specifically carried over the water quality standards promulgated pursuant to the 1965 Act, see 33 U.S.C. § 1313 (1976).

§ 1365(a)(1), and MEC had standing to bring that suit.[5]

MEC's suit soon became entangled with a suit filed by the State Water Control Board of Virginia, Fairfax County, and the District, all of whom also sought to limit WSSC's flows to Blue Plains pursuant to the agreements.[6] WSSC sought to have MEC's suit consolidated with that filed by SWCB, but Judge Smith rejected that effort. Negotiations in the SWCB suit finally led, in 1974, to a new interjurisdictional agreement for allocating the capacity of Blue Plains. This agreement was formalized in a consent decree, after the agreement received the approval of EPA.

On May 31, 1974, EPA issued a NPDES permit for Blue Plains. Pursuant to EPA rules, several parties, including MEC, filed objections to portions of the permit. On the basis of these objections, EPA set the Blue Plains NPDES permit for an adjudicatory hearing.

Following these administrative developments, several hearings were held in this case in the district court, first on MEC's motion to withdraw its request for a preliminary injunction,[7] and later on WSSC's motion to dismiss. Both motions were ultimately granted.[8]

On May 10, 1976, after a timely appeal by MEC, we remanded this case to the district court to consider three questions.[9] No action was taken on the remand until the spring of 1978, when, at the direction of the district court, MEC filed both a memorandum addressing the remanded issues and a motion to amend its complaint, After respondents filed opposing memoranda, the district judge dismissed the complaint without leave to amend. He ruled:

(1) the instant action has been rendered moot by the consent decree in *State Water Control Board, et al. v. Washington Suburban Sanitary Commission,* C.A. No. 1813–73 and by the

violations of the Federal Water Pollution Control Act.

It seems therefore, necessary to address on an administrative level both the agreement and the permit and pursue those matters, since they involve parties, one of whom is the Environmental Protection Agency that is not before the Court in this case.

J.A. 156–57.

Counsel for Maryland sought to have the case dismissed in light of MEC's motion, but the district court took no action on Maryland's request at that time.

---

5. Judge Smith dismissed the suit as to Maryland Dept. of Resources and the Montgomery County government, since they had no control over flows from WSSC to Blue Plains. The action was later dismissed as to EPA as well, for the court held that EPA's enforcement duties under the 1972 Act were discretionary and could not be compelled at the behest of a citizen suing pursuant to § 1365(a)(1).

6. *State Water Control Board v. Washington Suburban Sanitary Commission,* No. 1813–73 (D.D.C.).

7. MEC moved to withdraw its motion for preliminary relief because of the pending administrative proceedings. At the hearing on July 31, 1974, counsel for MEC stated:

> [T]here are a number of administrative matters which have arisen in the case since the filing of the case in April of 1973, which now appear to need resolution before the case can be heard properly by the Court.
>
> \* \* \* \* \* \*
>
> It now appears, for instance, that a discharge permit has been issued by Region 3 of EPA for the Blue Plains Sewage Treatment Plant.
>
> The issuance of that permit, we believe, is contrary to the Federal Water Pollution Control Act.
>
> Furthermore, an agreement has been reached between the several area municipalities and jurisdictions and we believe in addition, that this agreement would provide for

8. WSSC's motion to dismiss was granted on February 10, 1975.

9. Our order asked the district court to determine:

> (1) Whether this action is moot, in whole or in part, in light of the consent decree entered by the District Court in *State Water Control Board et al. v. Washington Suburban Sanitary Commission,* C.A. No. 1813–73, in the United States District Court for the District of Columbia;
>
> (2) If this action is moot in part, then what particular claims are moot and what claims are not; and
>
> (3) Whether the commencement of hearings by the Environmental Protection Agency on the settlement of effluent levels for the Blue Plains Plant requires dismissal of this action on the ground that the Environmental Protection Agency has primary jurisdiction.

issuance of a discharge permit governing discharges from the Blue Plains Sewage Treatment Plant and related overflow points in the District of Columbia;

(2) the Environmental Protection Agency (EPA) has primary jurisdiction to establish effluent limitations controlling the discharges from the Blue Plains plant and related overflow points;

(3) there is no basis for the Court to retain jurisdiction over this action pending completion of the administrative proceeding at EPA regarding the permit because no relief could be granted based solely upon allegations of violations of water quality standards as to discharge sources covered by a permit;

(4) all claims with respect to discharges within this District having been disposed of, there is no basis for the assumption by this Court of ancillary jurisdiction with respect to discharge points located outside this District;

(5) this Court is not the proper forum for the resolution of claims regarding discharge sources located outside the District under 33 U.S.C. § 1365(c)(1) (Supp. V, 1975);

(6) the Water Resources Administration, Department of Natural Resources, State of Maryland has primary jurisdiction to issue National Pollutant Discharge Elimination System permits with respect to discharge sources located within that state and to establish effluent limitations with respect thereto;

(7) in view of *Bethlehem Steel Corp. v. EPA*, 538 F.2d 513 (2d Cir. 1976), the Court lacks subject matter jurisdiction over claims based upon allegations of violations of water quality standards.

MEC appeals from that decision.

## II.

The doctrine of primary jurisdiction has developed to guide courts in determining how to proceed when some or all of the issues in the litigation are concurrently cognizable before an administrative agency.[10] Permitting an agency to resolve these issues in the first instance may serve one or both of two important interests: allowing the agency to bring its expertise to bear before the court reaches a final decision,[11] or, in some cases, avoiding the need for a final decision by the courts altogether.[12]

This case provides a particularly appropriate occasion for yielding primary jurisdiction to the expert agency. The NPDES proceeding is currently pending before the administrator of EPA.[13] The principal issue in that proceeding is the appropriate level and quality of discharge from Blue Plains, the same discharge which MEC

---

**10.** *See* 3 K. Davis, Administrative Law Treatise, § 19.01 (1958) at 3: "The precise function of the doctrine of primary jurisdiction is to guide a court in determining whether the court should refrain from exercising its jurisdiction until after an administrative agency has determined some question or some aspect of some question arising in the proceeding before the court."

**11.** *See, e. g., United States v. Western Pacific R. R. Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956), *quoting General American Tank Car Corp. v. El Dorado Terminal Co.*, 308 U.S. 422, 433, 60 S.Ct. 325, 84 L.Ed. 361 (1940): "'Primary jurisdiction . . . comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body;

in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.'"

**12.** *See Aircraft & Diesel Equipment Corp. v. Hirsch*, 331 U.S. 752, 767, 67 S.Ct. 1493, 1501, 91 L.Ed. 1796 (1947): "The very purpose of providing either an exclusive or an initial and preliminary administrative determination is to secure the administrative judgment either, in the one case, in substitution for judicial decision or, in the other, as foundation for or perchance to make unnecessary later judicial proceedings."

**13.** Partial review of the initial decision was granted by the Administrator on October 18, 1978.

seeks to abate in this action.[14] Perforce many of the technical questions relevant to this case are also central to the permit proceeding. Presumably the permit proceeding will be deeply concerned with the effect of Blue Plains' discharge on the water quality of the Potomac. Thus, the determinations made in that administrative proceeding are likely to be highly relevant to MEC's complaint in district court.

Even more important, the resolution of the administrative proceeding may make unnecessary any decision in this case. In the first place, MEC may gain a substantial measure or all of the relief it seeks through limitations included in the permit. Even if MEC is unsuccessful before the administrator of EPA, it will have the right to petition this court for review of the permit ultimately granted by EPA.[15] Second, the appellees have raised a substantial argument that the issuance of the permit will insulate them from all actions based on any discharge which conforms with the terms of the permit.[16] In view of the likelihood that the permit will be issued in the near future, any relief that this court could grant MEC

might be mooted by the issuance of the permit.

Thus, orderly administration and appropriate regard for Congress' clear intention to give EPA a substantial initial role in determining the appropriate levels of discharges dictate that the federal courts withhold jurisdiction until EPA completes the pending administrative proceeding.

### III.

The only remaining issue for our consideration is whether the instant action should be dismissed (the decision of the district court), or whether instead it should be stayed pending the conclusion of the permit proceeding. Normally, where a court refrains from exercising jurisdiction on primary jurisdiction grounds, judicial proceedings are simply stayed until the administrative agency has had an opportunity to consider the issues. However, dismissal may be warranted in some cases, particularly where no party is prejudiced thereby. *See United States v. Michigan National Corp.,*

---

14. Specifically, in setting the Blue Plains permit for review, the Administrator listed several issues that are clearly germane to this litigation:

(1) Whether the Regional Administrator was in error in failing to apply the District of Columbia's water quality standard for dissolved oxygen as that standard was approved in August, 1973, and, if so, the significance of that error.

(2) Whether the Regional Administrator erroneously considered the cost of compliance in determining permit terms, contrary to the requirements of section 301(b)(1)(C) (See Decision of the General Counsel No. 37) and, if so, the significance of that error.

(3) Whether the Regional Administrator erroneously relieved the Blue Plains plant from doing its share towards reducing the total instream pollutant load because of the contributions of upstream discharges to the river.

(4) Whether the Regional Administrator erroneously found that phosphorus removal alone may be sufficient to reduce levels of algae in the Potomac.

(5) Whether the Regional Administrator erroneously found that there is no basis at present for setting a limitation on nitrogen.

In addressing issues (1), (4) and (5), the parties should also discuss the following questions:

(A) Do the District of Columbia narrative water quality criteria provide a basis for setting nutrient limitations in the permit independently of the dissolved oxygen numerical criteria, and if so, how should such permit limitations be determined?

(B) Should the Regional Administrator have included in the permit a requirement that the permittee conduct a study directed toward resolving the denitrification issue?

*In re* NPDES Permit for Blue Plains Sewage Treatment Plant, NPDES Appeal No. 78–4 (Oct. 18, 1978) (footnote omitted).

In addition, the Administrator has undertaken to review issues concerning dechlorination, sewage flow calculation and the relationship between this permit application and the timing of the upcoming need to renew the permit.

15. *See* 33 U.S.C. § 1369(b)(1)(F) (1976).

16. *See* 33 U.S.C. § 1342(k) (1976). *But see Illinois v. City of Milwaukee,* No. 77–2246, 599 F.2d 151 at 158–599 (7th Cir. April 26, 1979). Of course, if a permittee fails to comply with the terms of a permit, both the EPA (*see* 33 U.S.C. § 1319) and citizens (*see* § 1365(a) and (f)(6)) may sue to enforce the terms and conditions of the permit.

419 U.S. 1, 4–5, 95 S.Ct. 10, 42 L.Ed.2d 204 (1974).

We believe that this is a case in which dismissal rather than a stay of the action is appropriate. This litigation began six years ago and lay dormant for nearly two years after our first decision. Much has happened in the interim, and plaintiffs themselves have recognized a need to renovate their pleadings substantially.[17] Moreover, the issuance of the NPDES permit may lead these plaintiffs to seek direct review of that decision in this court, thus further complicating the procedural posture of the case if it is left lingering before the district court. Since the relief plaintiffs seek is primarily prospective, they will be free, if they so desire, to seek further judicial relief after the Administrator's decision.[18] Under these circumstances, we must agree with the district court that litigation must come to an end at some time, and that this case has reached that time.

In view of our disposition of this case, we find it unnecessary to decide any of the other issues raised on this appeal.

*So ordered.*

---

**17.** The new matters that MEC wished to include in its amended and supplemented complaint included additional allegations of continuing violations of ambient water quality standards; a complaint against the EPA for delay in the permit-issuance proceeding; and the need for an Areawide Waste Treatment Management Plan prior to any further actions affecting the water quality in the Potomac. *See* Brief for Appellant MEC at 13–14.

**18.** The posture of this case bears strong similarities to *Far East Conference v. United States*, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952), where the Court dismissed a suit by the United States seeking to enjoin an alleged violation of the Sherman Act, because the United States had not resorted to the Maritime Board in the first instance. In deciding that dismissal by the district court was appropriate, rather than a stay, Justice Frankfurter focused on three factors: 1) the issues were squarely within the scope of Maritime Board's jurisdiction; 2) direct review of the Board's decision was available in the court of appeals; and 3) a similar suit could be filed at a later time, if appropriate. *Id.* at 576–77, 72 S.Ct. 492. The parallels to the instant case are obvious.