The DRIVING FORCE, INC.

v.

MANPOWER, INC., a/b/a "The Driving Force,"

and

Transpersonnel, Inc., a/b/a "The Driving Force."

Civ. A. No. 79–3675.

United States District Court, E. D. Pennsylvania.

Aug. 15, 1980.

Kimmelman & Farrell by Nelson E. Kimmelman, Philadelphia, Pa., for plaintiff.

Quarles & Brady by Thad F. Kryshak, Milwaukee, Wis., for defendants.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

Plaintiff instituted this action seeking injunctive relief which would grant plaintiff the exclusive use of the name "The Driving Force, Inc." Plaintiff filed the action under the Trademark Act of 1946, (Lanham Act), as amended, 15 U.S.C. § 1051 *et seq.*, invoking jurisdiction pursuant to 28 U.S.C. § 1338 and pursuant to the diversity of citizenship provision contained in 28 U.S.C. § 1332.

The defendant has filed a counterclaim based upon the same statute and jurisdiction provision, seeking similar injunctive relief.

The parties have filed cross motions for a preliminary injunction. On March 6, 1980, the Court heard oral argument and the testimony of witnesses regarding the motions.[1] The record has been supplemented by the submission of various exhibits, affidavits and depositions.

The defendant has filed a post preliminary injunction hearing brief in which it argues that both motions should be denied, and that the Court should invoke the doctrine of primary jurisdiction and direct the parties to proceed with the pending Patent and Trademark Office proceedings. Plaintiff argues for retention of the case by this Court, and asserts that the delay while awaiting the decision of the Patent and Trademark Office will be prejudicial to it.

---

[1]. The testimony of three witnesses was taken by deposition in lieu of trial.

For the reasons to follow, the cross motions for preliminary injunction are denied, and the proceedings before this Court are stayed pending a decision by the Patent and Trademark Office.

## FACTUAL BACKGROUND

The facts may be summarized as follows. Plaintiff is a Pennsylvania corporation which was incorporated under the name "The Driving Force, Inc." on January 9, 1975. Defendant Transpersonnel, Inc. is an Illinois corporation which is the wholly owned subsidiary of defendant Manpower, Inc., a Delaware corporation. Both Transpersonnel, Inc. and Manpower, Inc. have their principal place of business in Milwaukee, Wisconsin.

Beginning in January, 1976, Transpersonnel, Inc. began using the name "The Driving Force" in conjunction with its corporate name and logos.

Both "The Driving Force, Inc." and Transpersonnel, Inc. provide essentially the same services, which is the providing of truck drivers and the leasing of transport personnel to companies to drive the trucks of said companies and to perform associated services.

Franchisees of defendant Manpower have been operating under the names "Transpersonnel" and "The Driving Force" since January 1976, for the business of supplying truck drivers. Since that time, the defendants have operated in Pennsylvania through a franchise located in Harrisburg and through a branch office in Pittsburgh serving customers in Philadelphia, Allentown, Scranton and Wilkes Barre.

On November 30, 1976, plaintiff filed its application for federal registration of "The Driving Force" mark for leased drivers, warehousing and materials handling services. The defendant filed its application for federal registration of the mark "The Driving Force" in February, 1977. Plaintiff's application for federal registration was allowed on March 14, 1978, and the mark "The Driving Force" was published for possible opposition by others. Upon publication, the defendant filed an opposition proceeding against the allowance of plaintiff's application. Opposition 61,159 was declared on September 1, 1978. The United States Patent and Trademark Office has not rendered a decision regarding defendant's opposition and has stayed its proceedings pending the outcome of this litigation.

## TRADEMARK REGISTRATION

The comprehensive federal scheme of registration of trademarks is governed by the Lanham Act, as amended, 15 U.S.C. § 1501 *et seq.*. § 1051 provides for registration of trademarks with the Patent and Trademark Office. § 1052, subsection (d), provides, *inter alia,* that no trademark shall be refused registration unless it "so resembles a mark registered in the Patent and Trademark Office or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant to cause confusion or to cause mistake, or to deceive . . . ." Subsection (d) further provides for concurrent registration in certain circumstances. § 1052(e) provides that no trademark shall be refused registration unless it "[c]onsists of a mark which, (1) when applied to the goods of the applicant is merely descriptive or deceptively misdescriptive of them, . . . ."

§ 1063 provides for the filing of an opposition by "[a]ny person who believes that he would be damaged by the registration of a mark . . . ." § 1066 provides that the Commissioner may declare an interference whenever an application "so resembles a mark previously registered by another . . . as to be likely . . . to cause confusion or mistake or to deceive."

§ 1067 establishes the Trademark Trial and Appeal Board "to determine and decide the respective rights of registration" in "every case of interference, opposition to registration, application to register as a lawful concurrent user, or application to cancel the registration of a mark, . . . ." § 1068 provides:

"In such proceedings the Commissioner may refuse to register the opposed mark,

may cancel or restrict the registration of a registered mark, or may refuse to register any or all of several interfering marks, or may register the mark or marks for the person or persons entitled thereto, as the rights of the parties under this chapter may be established in the proceedings: ...."

§ 1071 provides for appeal to the Court of Customs and Patent Appeals or, alternatively, for remedy by way of civil action, on the part of "[a]n applicant for registration of a mark, party to an interference proceeding, [or] party to an opposition proceeding ... who is dissatisfied with the decision of the Commissioner or Trademark Trial and Appeal Board."

§ 1119 provides that "[i]n any action involving a registered mark the court may determine the right to registration, order the cancellation of registrations, in whole or in part, restore cancelled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." § 1116 provides that "[t]he several courts vested with jurisdiction of civil actions arising under this chapter shall have the power to grant injunctions, ...."

§ 1121 provides that "[t]he district and territorial courts of the United States shall have original jurisdiction and the courts of appeal of the United States shall have appellate jurisdiction, of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties." 28 U.S.C. § 1338(a) provides "[t]he district courts shall have original jurisdiction of any civil action arising under any act of Congress relating to ... trademarks."

## PRIMARY JURISDICTION

■ The doctrine of primary jurisdiction has developed to guide courts in determining how to proceed when some or all of the issues in the litigation are concurrently cognizable before an administrative agency. *Montgomery Environmental Coalition Citizens Coordinating Committee on Friendship Heights v. Washington Suburban Sanitary Commission*, 607 F.2d 378, 381 (D.C.Cir. 1979) "Permitting an agency to resolve these issues in the first instance may serve one or both of two important interests: allowing the agency to bring its expertise to bear before the court reaches a final decision, or, in some cases, avoiding the need for a final decision by the courts altogether." *Id.* (footnotes omitted)

The doctrine "comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *United States v. Western Pacific R. Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956).

"No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *Id.*

These reasons are "the desirable uniformity which would obtain if initially a specialized agency passed on certain types of administrative questions" and the opportunity for application of the expert and specialized knowledge and experience of the agency. *Id.*

Although some earlier cases carried the implication that if the agency's conclusion would not finally resolve the issue primary jurisdiction would not be warranted, the courts have often not restricted themselves to such limited invocation of the doctrine. See the thorough discussion on primary jurisdiction in *Mississippi Power and Light Co. v. United Gas Pipe Line*, 532 F.2d 412, 417–18 (5th Cir. 1976), *rehearing denied*, 540 F.2d 1085, *cert. denied*, 429 U.S. 1094, 97 S.Ct. 1109, 51 L.Ed.2d 541 (1977). *See also, In Re "Agent Orange" Product Liability Litigation*, 475 F.Supp. 928, 931–32 (E.D.N.Y.1979). Indeed, where it is "very likely that a prior agency adjudication of ...

[the] dispute will be a *material aid* in ultimately deciding "the issue before the Court, the Supreme Court has required that primary jurisdiction be invoked, without even deciding whether the agency to which the case is to be referred even has jurisdiction to finally determine the basic dispute in the case. *Ricci v. Chicago Mercantile Exchange,* 409 U.S. 289, 305, 93 S.Ct. 573, 582, 34 L.Ed.2d 525 (1973) (emphasis in original).

■ Careful consideration of the reasons for the existence of the doctrine of primary jurisdiction leads us to conclude that the policy behind the doctrine will indeed be furthered by resort to the Trademark Trial and Appeal Board for an initial determination in this matter.

■ The Patent and Trademark Office is invested by Congress with broad authority to regulate the registration of trademarks. Included within the statutory mandate of the Lanham Act is the power to resolve inter–party disputes concerning registration of particular marks. The Trademark Trial and Appeal Board has been created especially to hear such disputes. We believe that that body is better equipped than are the courts to make an initial determination as to trademark registration and infringement.

The Trademark Trial and Appeal Board has undoubtedly had a great deal more experience than has a district court in matters of this kind, and in reaching a decision can draw upon familiarity with the vast array of trademark cases which it has deliberated in the past. The question here is one of the right to trademark registration and use, and thus is precisely the sort of issue with which the Trademark Trial and Appeal Board, unlike a district court, deals on a regular basis. Before this court considers the case, the Patent and Trademark Office, acting through the Trademark Trial and Appeal Board, ought to have the opportunity to apply its expert, specialized knowledge and experience.

In addition, a decision by the specialized agency entrusted with trademark registration may serve as a final disposition of this matter. But even if one or both of the parties were to be dissatisfied with a Patent and Trademark Office resolution of the case and either take an appeal to the Court of Customs and Patent Appeals or pursue an action in district court, the opinion and decision of the specialized body would be of "material aid" to the tribunal which would at that time be confronted with this case. This is especially so in view of the deference which must be shown by courts to Trademark Trial and Appeal Board decisions.

Decisions of the Trademark Trial and Appeal Board "are certainly entitled to the most respectful consideration because of the Patent Office's day–to–day expertise in adjudicating cases wherein the ultimate question decided is the question of 'likelihood of confusion' as that term is employed in various parts of the Lanham Act." *Carling Brewing Co. v. Philip Morris Inc.,* 297 F.Supp. 1330, 1337 (N.D.Ga.1968); *accord, D. M. & Antique Import Corporation v. Royal Saxe Corp.,* 311 F.Supp. 1261, 1274 (S.D.N.Y.1970). " 'It is true that a court in a trademark suit determines the right to use and the Patent Office determines the right to register, but it is also true that in determining the right to register, the Patent Office must necessarily pass upon the right to use.' " *Carling Brewing Co. v. Philip Morris Inc.,* 297 F.Supp. at 1337, quoting *Ex Parte Crown Beverage Corp.,* 102 U.S.P.Q. 312, 314 (Commr. of Pat. 1954).

■ Even though decisions of the Trademark Office are not binding in regard to litigation in the courts on the same or related issues, *see, e. g., Carling Brewing Co. v. Philip Morris Inc.,* 297 F.Supp. at 1337, a decision of the Patent Office as to the confusing similarity of two marks must be accepted as controlling unless the contrary is established by evidence which in character and amount carries thorough conviction. *Johnson & Johnson v. Colgate–Palmolive Co.,* 345 F.Supp. 1216, 1221 (D.N.J. 1972) (opinion by Judge Garth); *accord, Aloe Creme Laboratories, Inc. v. Texas Pharmacal Co.,* 335 F.2d 72, 74 (5th Cir. 1964); *Esso Standard Oil Co. v. Sun Oil Co.,* 229 F.2d 37 (D.C.Cir.1956); *Digicom, Inc. v. Digicon, Inc.,* 328 F.Supp. 631, 635 (S.D.Tex. 1971). A district court proceeding following a decision of the Trademark Trial and

**26**

Appeal Board is not a trial de novo, "in spite of the fact that some courts have loosely used this language." *Sarah Coventry, Inc. v. Sardelli & Sons, Inc.*, 526 F.2d 20, 21 (1st Cir. 1975), *cert. denied*, 426 U.S. 920, 96 S.Ct. 2626, 49 L.Ed.2d 374 (1976). "The statute provides that evidence may be taken de novo, not that the district court is to ignore the decision of the Board." *Id.*

Plaintiff has advanced no reasons to support its contention of prejudice resulting from any delay pending a decision by the Patent and Trademark Office. Rather, plaintiff has merely asserted that that office has stayed its proceedings, and that it has a tremendous backlog and no procedure for expediting cases. Such a backlog, and any delay which might result from it would, of course, be regrettable, but it cannot, especially absent a showing of likely detriment, prevent our application of the doctrine of primary jurisdiction.

In accordance with the above opinion, the suit before this court will be stayed pending a final decision by the Trademark Trial and Appeal Board and the Patent and Trademark Office in regard to Opposition No. 61,159, and final determination by those bodies of the right of the parties in this suit to trademark registration of "The Driving Force."