**THE DRIVING FORCE, INC.**

v.

**MANPOWER, INC., d/b/a "The Driving Force"**

**and**

**Transpersonnel, Inc., d/b/a "The Driving Force".**

**Civ. A. No. 79–3675.**

United States District Court, E. D. Pennsylvania.

March 25, 1982.

Nelson E. Kimmelman, Philadelphia, Pa., for plaintiff.

Paul F. Prestia, Valley Forge, Pa., George K. Whyte, Milwaukee, Wis., for defendant.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

Both plaintiff and defendant in this trademark action[1] seek injunctive relief granting exclusive use of the name "The Driving Force," as well as damages. Each provides essentially the same services, the supplying of truck drivers and the leasing of transport personnel to companies to drive trucks and perform associated services. Each operates in Pennsylvania and surrounding states, as well as in many other states in the country. By memorandum opinion and order of August 15, 1980, this court stayed its proceedings pending a decision by the Trademark Trial and Appeal Board (TTAB) in the defendant's previously filed opposition (No. 61,159) to the plaintiff's registration of "The Driving Force" mark. *Driving Force, Inc. v. Manpower, Inc.*, 498 F.Supp. 21 (E.D.Pa.1980). An

---

[1] The complaint was filed on October 11, 1979, discovery undertaken and trial held on March 6, 1980.

opinion and decision dismissing the opposition was entered by the TTAB on December 28, 1981, a copy of which was received by this court on January 11, 1982. Following a telephone conference with this court the parties filed memoranda on the "legal impact" of the TTAB decision. Plaintiff requests that this court "resume" its jurisdiction (presumably, remove it from the civil suspense docket and reinstate it on the active case docket) and render a decision on the merits guided by the expertise and in deference to the findings of the TTAB. Defendant argues for a continuation of the stay of proceedings pending determination of an appeal of the TTAB decision to the Court of Customs and Patent Appeals, (CCPA), notice of which has been filed. For the reasons which follow, this case is reinstated on the active docket, and a preliminary injunction is entered in favor of the plaintiff and against the defendant.

## I

In support of its position the defendant asserts that unlike a decision by the TTAB, a CCPA decision is both final and binding, that the CCPA is likely to reverse the TTAB's dismissal of the opposition, and that significant saving in time and cost will thus result from a continued stay. Plaintiff argues that since we now have the benefit of the TTAB's expertise, we should render a decision at this time on the issues presented to us.

Defendant would have this court do nothing until the CCPA renders judgment on the TTAB findings, and then adopt that court's holding following the doctrine of collateral estoppel. We believe that the salutary purpose of our application of the doctrine of primary jurisdiction has been achieved now that we have the benefit of the expert opinion of the TTAB, and that any further stay of the proceedings before this court would deprive the plaintiff of any meaningful opportunity to present a case in district court pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.* Continued stay of the proceedings in this court would, under defendant's theory, mean that once an opposition had been filed to an application for registration with the Patent and Trademark Office, the party seeking registration would be effectively foreclosed from pursuing those district court remedies as provided for in the Lanham Act. The implication to be drawn from defendant's reasoning is that a stay of district court proceedings, issued pending filing of an expert opinion by the TTAB, would remain in effect until a decision on appeal of that opinion, with collateral estoppel effect, is handed down by the CCPA, following which the decision of this court would simply echo that of the CCPA. Yet such a result would frustrate the obvious intent of Congress to provide for a remedy for enforcement of trademark rights in district court independent of any proceedings initiated in the Patent and Trademark Office. For example, meaningful opportunity to litigate the claim filed in this court will have been denied to plaintiff if, on appeal of the TTAB decision favorable to plaintiff, the CCPA reversed the dismissal of the opposition and ruled in favor of the defendant. The collateral estoppel effect of such decision would preclude a different finding by this court. There is, of course, considerable difference between applying collateral estoppel to a CCPA decision, and as noted in our earlier opinion, 498 F.Supp. at 25, treating as controlling a TTAB decision "unless the contrary is established by evidence which in character and amount carries thorough conviction." Moreover, the collateral estoppel effect of a CCPA decision on the same issue involving the same parties as now before this court cannot be doubted.

Under the Lanham Act, "[t]he district...courts of the United States shall have original jurisdiction and the Courts of Appeal of the United States shall have appellate jurisdiction, of all actions arising under this chapter...." 15 U.S.C. § 1121. "In any action involving a registered mark the court may determine the right to registration...." 15 U.S.C. § 1119. No express mention is made in the statute of the possibility of simultaneous proceedings before the TTAB or CCPA and district or appellate court. Thus it appears that tech-

nically there is no reason why parallel proceedings may not be brought by way of opposition before the TTAB by the party opposed to trademark registration and civil action before a district court by the party seeking to enforce trademark rights. Indeed, that is precisely what occurred in the case *sub judice*. Nevertheless, as a practical matter there is no reason for a district court to proceed while a previously filed opposition is pending with the TTAB, especially in view of the principles of primary jurisdiction and the expertise of the TTAB. *See* 498 F.Supp. 21. Accordingly, this matter was stayed pending the TTAB's decision. However, neither the doctrine of primary jurisdiction nor logic itself can support further stay by this court.

Primary jurisdiction permits an administrative agency to resolve in the first instance issues concurrently cognizable in litigation before the court. Application of the doctrine permits an agency to bring its specialized expertise and experience to bear before a court reaches a final decision. Such a policy tends to promote uniformity and may even avoid the need for court decision. *See, Driving Force, Inc. v. Manpower, Inc.*, 498 F.Supp. at 24–25, and cases cited therein. Once the court has the benefit of the specialized agency's expertise, as this court now does, primary jurisdiction should no longer operate to further stay action by the court applying that doctrine in order to defer to a concurrent appeal of the agency's decision. Now that the TTAB has rendered a decision in the case *sub judice*, this court should not delay its decision merely because appeal of the TTAB decision has been taken to the CCPA. Although the possibility exists that concurrent appeals may be filed in both the CCPA and Third Circuit, it appears that the opportunity for such parallel proceedings was created by the Lanham Act and may not be foreclosed by action of this court inconsistent with that statute. Furthermore, we are confident that the appellate courts are fully capable of resolving any difficulties which might arise due to the existence of concurrent appeals.

Moreover, there is another compelling reason for rendering a decision in this case now: the issue before us is somewhat different and broader than that before the TTAB and CCPA. Those bodies face the question of right to registration of a mark, and it is the dismissal by the TTAB of defendant's opposition to plaintiff's registration that is the subject of the appeal to the CCPA. This court must determine not only the right to registration of plaintiff's mark, a question for which jurisdiction is specifically provided by the Lanham Act, but also the right of the plaintiff or defendant to use of that mark, independent of the questions of registration. In that regard we must address the issue of the appropriate relief, if any, to be granted the party prevailing in this action. Thus we must consider questions of injunction and damages which go beyond the scope of the TTAB and CCPA proceedings.

II

We have concluded that further stay of the proceedings before this court is inappropriate. Thus, we now have before us once again the parties' cross motions for a preliminary injunction. As already noted, 15 U.S.C. § 1119 confers on this court authority to "determine the right to registration" of trademarks. In reaching a decision on the issue of right to use of "The Driving Force" mark, we consider the previously submitted evidence of record, including deposition testimony, exhibits and affidavits, and legal memoranda and oral arguments, as well as the opinion of the TTAB.

Plaintiff asserts that its mark is not merely descriptive, that it has established priority of use, and that it is entitled to injunctive relief because of the likelihood of confusion which would result from continued use of the name "The Driving Force" by the defendant.

Defendant agrees that its contemporaneous use of the term "The Driving Force" is likely to cause confusion, mistake or deception in the marketplace as to the source of their respective services. In opposing plaintiff's registration of "The Driving Force" as

a service mark, defendant argues that it has acquired prior and superior rights to the use of that term. Specifically, defendant maintains that "The Driving Force" is merely descriptive of plaintiff's services, that the term so applied has not become distinctive or acquired a secondary meaning and that, therefore, plaintiff is prohibited under Section 2(e) of the Lanham Act from registering the term as its service mark. Defendant further contends that "The Driving Force" as applied to its services has, in fact, acquired a secondary meaning, and that, on that basis, defendant has established a superior right to use the term.

■ Section 2(e) of the Lanham Act prohibits the registration of marks, including service marks, which "when applied to the goods of the applicant [are] merely descriptive...of them...." 15 U.S.C.A. § 1052(e). This prohibition exists at common law as well. *Q-Tips, Inc. v. Johnson & Johnson*, 206 F.2d 144, 145–46 (3d Cir. 1953), *cert. denied*, 347 U.S. 935, 74 S.Ct. 630, 98 L.Ed. 1086 (1954); *Walker-Davis Publications, Inc. v. Penton/IPC, Inc.*, 509 F.Supp. 430, 438 (E.D.Pa.1981). Under the Lanham Act and at common law a mark which merely describes an applicant's goods or services is registrable if it has become distinctive, that is, if it has acquired a secondary meaning. *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1228 (3d Cir. 1978); *Walker-Davis Publications, Inc.*, at 438.

Registration of a non-distinctive mark is precluded if

"the terms comprising it, as understood in their normal and natural sense by those to whom the marked product is sought to be marketed, are merely descriptive of the product [or service], or its ingredients, qualities or characteristics...."

*Flexitized, Inc. v. National Flexitized Corporation*, 335 F.2d 774, 779 (2d Cir. 1964). *See also, Q-Tips, Inc. v. Johnson & Johnson*, 206 F.2d at 146; *Clarke v. K-Mart*, 473 F.Supp. 1299, 1301 (W.D.Pa.1979). In determining whether a mark is descriptive, a distinction is frequently drawn between terms which specifically identify a product or service and those which merely suggest the nature thereof. The latter type is registrable; the former is not. *See, Application of Realistic Company*, 440 F.2d 1393 (C.C.P.A.1971) ("CURV" is suggestive of almost any manufactured article having or producing a curved shape; it is not merely descriptive of permanent wave curling solutions); *Application of Colgate-Palmolive Co.*, 406 F.2d 1385 (C.C.P.A.1969) ("CHEW 'N CLEAN" suggests, but does not describe, the manner in which the dentifrice is used); *Louis Rich, Inc. v. Horace W. Longacre, Inc.*, 423 F.Supp. 1327, 1337 (E.D. Pa.1976) ("gobble-gobble" is suggestive of turkey but does not describe turkey meat products).

■ We concur with the conclusion of the TTAB that "The Driving Force" is suggestive and not descriptive of plaintiff's services. *See, Manpower, Inc. v. The Driving Force, Inc.* (T.T.A.B. Dec. 28, 1981) at 8. The term cannot be said to identify plaintiff's services which it describes as supplying leased truck drivers to business and industry. If "The Driving Force" conveys any meaning at all to potential customers, it merely suggests, very generally, that plaintiff is in the business of providing transportation services. The mark, *per se*, does not describe the features or functions associated with plaintiff's business.

We agree with the reasoning of the TTAB:

"[W]e see no possibility whatever that 'THE DRIVING FORCE' could immediately convey the characteristics of applicant's services to potential customers who had not been exposed to literature or oral presentations which further described them. To reach such a conclusion would require a great deal of imagination, indeed. For example, a salient characteristic of applicant's services is that they concern truck drivers. How does the term 'THE DRIVING FORCE' immediately convey the motion of *truck* drivers, rather than, for example, personal chauffeurs, limousine drivers, bus drivers, taxicab drivers, etc. Another characteristic is that the drivers are supplied to clients

pursuant to a lease contract. How is that conveyed by the term 'THE DRIVING FORCE', rather than for example, that the services are employment services whereby qualified drivers are found for direct employment by the client company? Another is that the help is temporary help, available at any time. How is that conveyed? Since we can find no answers to these questions in the record before us, we conclude that 'THE DRIVING FORCE' is suggestive, not descriptive, and that it is a valid and registrable service mark as applied to the services of applicant."

*Manpower Inc. v. The Driving Force, Inc.,* at 7–8.

Accordingly, we hold that plaintiff's mark is not merely descriptive of its services and is, therefore, not precluded from registration on that basis. Our decision makes it unnecessary to determine whether "The Driving Force" has become distinctive with respect to services of either the plaintiff or defendant.

■ We now consider whether any impediments to the registration of plaintiff's mark remain. It is a fundamental tenet of trademark law that the right to protection of a mark arises from first appropriation and use of the term(s) comprising it. *Blue Bell, Inc. v. Farah Manufacturing Company, Inc.,* 508 F.2d 1260, 1264–65 (5th Cir. 1975); *General Business Services, Inc. v. Rouse,* 495 F.Supp. 526, 533 (E.D.Pa.1980).

■ The evidence shows that plaintiff first used "The Driving Force" on December 28, 1974, in a contract to supply drivers to "The Pep Boys", and has been using the phrase continuously since that time. Plaintiff was incorporated under that name on January 9, 1975, and applied for registration of the mark on November 30, 1976. The evidence also establishes that defendant began using "The Driving Force" in connection with its services in January, 1976 and filed for registration in February, 1977. Since plaintiff was the first party to adopt and use "The Driving Force" it has acquired a right, superior to that of the defendant, in the term. Accordingly, de-

fendant's opposition to registration of the mark is wholly unwarranted.

It is undisputed that the contemporaneous use of "The Driving Force" by both parties in this action is likely to confuse or mislead customers with respect to the source of the services purchased. For this and the foregoing reasons, plaintiff's motion for an injunction granting exclusive use of the term "The Driving Force" is granted and defendant's identical motion is denied. Defendant is thus enjoined from further use of any kind of the term "The Driving Force" in connection with its business of leasing truck drivers. Since it appears that all evidence and argument needed for determination of this issue by the court has been submitted, there is no need for the interim step of ordering preliminary relief, and the injunction is made permanent.